## EDWARDS *v.* UNITED STATES.

No. 377.   Argued February 12, 1941.—Decided March 3, 1941.

474

*Mr. J. Forrest McCutcheon* for petitioner.

*Mr. Richard H. Demuth,* with whom *Solicitor General Biddle* and *Messrs. Wendell Berge* and *M. Joseph Matan* were on the brief, for the United States.

Mr. Justice Reed delivered the opinion of the Court.

This case is here upon affirmance by the Circuit Court of Appeals of a sentence imposed after a plea of *nolo contendere.*[1] We granted certiorari because there were involved certain important questions of criminal procedure, especially with respect to a plea in bar filed by petitioner. That plea claimed immunity from prosecution because of prior incriminating testimony given under compulsion by the petitioner at an investigation conducted by the Securities and Exchange Commission.

The indictment against petitioner, in eleven counts, arose out of an alleged fraudulent scheme for selling in-

---

[1] 113 F. 2d 286.

terests, created by him as a part of the device, in various oil and gas leases in Oklahoma and Texas. The first three counts charged violations of the fraud provisions of the Securities Act, 15 U. S. C. § 77q (a); the fourth and fifth, violations of the registration provisions of that Act, 15 U. S. C. § 77e; counts six to ten, violations of the mail fraud statute, 18 U. S. C. § 338; and the eleventh count, a conspiracy to commit the offenses previously set forth.

On December 16, 1938, petitioner filed a demurrer, attacking the legal sufficiency of the indictment on a number of grounds. At the same time he filed a "Plea in Bar and Application for Production of Transcript of Evidence." The substance of this plea was the following: That on April 14, 1938, and two successive dates, pursuant to subpoenas duces tecum, petitioner had appeared before an officer of the Securities and Exchange Commission with the books and records called for, and "after having claimed his immunity against self incrimination, as provided by law and the Constitution of the United States, under compulsion, testified under oath, pursuant to various questions propounded and asked him by said officer of said Commission, said testimony concerning said defendant's identity and relationship to various trusts and organizations which are the subject matter of this prosecution and concerning divers and sundry other matters pertaining to the matters which are the subject of this prosecution, and particularly to the personal entries, books and records of said defendant, which are a part of the subject matter of this prosecution."

The pleading goes on to state, upon information and belief, that the evidence adduced by the Commission in the course of its investigation was transmitted to the Attorney General for criminal prosecution; that petitioner was compelled to give information and testimony "which

it is believed the Government will use against him in the prosecution herein"; and that petitioner was accordingly immune from prosecution under § 22 (c) of the Securities Act.[2] Petitioner further set forth that at the time of the Commission hearings he had demanded a copy of the transcript of his testimony, offering to pay the cost thereof, but that the request had been refused; that on December 1, 1938, he had made a similar request, which also had been refused, as evidenced by an attached letter from the assistant general counsel of the Commission.[3] Petitioner renewed his demand and tender of payment, asserting that it was necessary for him to have the transcript in the presentation to the court of his plea in bar, and that it was necessary for the court to have it before passing on the plea. The pleading concludes by pray-

[2] 15 U. S. C. § 77v (c): "No person shall be excused from attending and testifying or from producing books, papers, contracts, agreements, and other documents before the Commission, or in obedience to the subpena of the Commission or any member thereof or any officer designated by it, or in any cause or proceeding instituted by the Commission, on the ground that the testimony or evidence, documentary or otherwise, required of him, may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

[3] In part, the letter read:

"Inasmuch as the evidence adduced by the Commission in the course of its investigation was transmitted to the Attorney General for criminal prosecution and an indictment has been returned, this Commission does not feel it proper to make available to the defendant the testimony taken from witnesses which may be used by the Government in the prosecution of its case. In view of this, the Commission must respectfully refuse to comply with your request. The United States Attorney concurs in this view."

ing the court to order that the transcript be furnished petitioner and that he be heard on the merits of this plea in bar.

On February 28, 1939, the Government filed a pleading called a "Motion to Strike Plea in Bar and Objection to Production of Transcript of Evidence." This attacked the sufficiency of the plea in bar on its face in three different respects, and also alleged in the nature of an answer that petitioner

"was never sworn at any time during the proceedings or hearings complained of and at no time produced any books or records, and did not at any time testify under oath, and was never compelled to testify or give any in-. formation against himself or anyone else under oath or otherwise and that each of said hearings complained of was recessed shortly after the defendant interposed his plea of immunity."

In support of this last allegation the Government attached an affidavit of an attorney of the Securities and Exchange Commission who had been present on all three occasions when the petitioner claimed to have given incriminating testimony under compulsion.

Petitioner moved to strike this affidavit of the Commission attorney on the ground that it deprived him of his right to cross-examination and that it was "wholly incompetent to establish the facts attempting to be established."

The District Court overruled petitioner's demurrer to the indictment, his plea in bar and application for the transcript, and also his motion to strike the affidavit of the Commission attorney. An affidavit later filed by the Government in the Circuit Court of Appeals shows that at this hearing on petitioner's plea in bar

"counsel for the government of the United States stated to the Court that they had the transcripts of the record

in the proceedings . . . and if the government's affidavit was not sufficient, the government would offer them in evidence if the Court desired to examine them; that upon being so advised, His Honor, Judge Vaught, stated that he did not care to see the transcripts, that he did not need them to pass upon the said plea in bar, and that he was going to overrule the defendant's plea in bar."

The Government's motion to strike the plea in bar was overruled, also. Subsequently petitioner withdrew his original plea of not guilty,[4] and entered a plea of *nolo contendere*. The District Court sentenced him to three years on each count, the terms to run concurrently. On appeal petitioner assigned as error the action of the District Court in overruling his demurrer and plea.

When the case was argued before the Circuit Court of Appeals the Government submitted, over petitioner's objection, a copy of what it said was a transcript of petitioner's testimony before the Securities and Exchange Commission, supported by an affidavit of the assistant United States attorney in charge of this prosecution. The transcript was offered to buttress the Government's contention that petitioner had in fact given no testimony of an incriminating nature, but the Circuit Court of Appeals did not rest its affirmance even in part upon the contents of the transcript.

The court affirmed because the plea in bar did not allege that the claim of immunity was made in a "hearing" of the Commission as distinguished from an "investigation" and because no evidence was produced by petitioner in support of his plea. As to the demurrer to the indictment, the Circuit Court of Appeals found no error in omitting from the conspiracy count allegations that the classes of securities involved in the alleged frauds were not in the excepted categories of securities

---

[4] Petitioner had pleaded not guilty on December 17, 1938.

in section three of the Securities Act. This was the sole ground of petitioner's attack on the conspiracy count. In the belief that a sentence on this count, to run concurrently with equal sentences on the other counts, made it unnecessary to examine the other counts,[5] the court did not examine the sufficiency of the other counts.

Petitioner urges as grounds for our reversal of the judgment below the errors in overruling his plea in bar and demurrer, in affirming a sentence of three years on the conspiracy count of the indictment without examination of the other counts, and in receiving the transscript of testimony before the Commission and accompanying affidavit as evidence.

*Plea in Bar.* The Government challenges the sufficiency of the plea in bar to show petitioner's claim to the benefit of the amnesty of § 22 (c). It suggests that the excerpt set out in the third paragraph of this opinion shows only that testimony was given concerning "defendant's identity and relationship" to the organizations whose securities the indictment charges defendant fraudulently sold; that "other matters" testified to are not specified nor the "nature" of the testimony concerning them or his personal records. But the allegations of the plea are not to be weighed separately. Petitioner's identity and his relationship to the trusts alleged to have been created by him as a part of the fraudulent scheme are of primary importance in the proof of his criminality. This is quite different from the testimony in *Heike* v. *United States,*[6] a prosecution for fraud on the revenue in weighing imported sugar. There, former testimony in a Sherman Act proceeding related to official connection with a company involved and also a table showing the

---

[5] *Claassen* v. *United States,* 142 U. S. 140; *Gorin* v. *United States,* 312 U. S. 19.

[6] 227 U. S. 131.

amount of sugar handled by the company, and a claim for amnesty was denied because the evidence "neither led nor could have led to a discovery of his crime." Certainly, had petitioner given evidence of his creation of the organizations which the indictment says were part of his artifice it might easily have led to discovery of his trickery. It seems, too, that at least some of the other matters were specified, to wit: the personal entries, books and records of petitioner. Likewise, the nature of his alleged testimony concerning his records is sufficiently related to the indictment by saying they are a part of the subject matter of this prosecution. The plea is good on its face.

It is next urged that the plea was properly overruled because of petitioner's failure to prove its allegations.[7] Such result is assumed to follow on the theory that, as the burden was on petitioner to prove his plea, the failure of the record to show an offer of proof justifies the order. As appears from the preceding statement of the case, the trial court overruled not only the plea in bar but petitioner's motion for production of the transcript, which was certainly the best evidence of whether the testimony before the Commission was sufficiently related to the prosecution to support amnesty. In the *Martin* case,[8] this Court said the action dismissing a traversed motion for failure of proof would have been reversed if the opportunity to establish the facts by evidence had been denied the accused. Treating the Government's motion to strike the plea in bar as a traverse of that pleading which would justify the order overruling it in the absence of a showing in the record of an offer of proof, that result does not follow where, as here, the plea

---

[7] Cf. *Nardone* v. *United States*, 308, U. S. 338, 341; *Martin* v. *Texas*, 200 U. S. 316, 319; *Mamaux* v. *United States*, 264 F. 816, 819.

[8] *Supra*, note **7**.

is accompanied by a motion for the production of the transcript of the former evidence. The plea and motion showed that application had previously been made to the Securities and Exchange Commission for the transcript and had been refused.

We assume that the proceeding in which the former testimony was given was a private and confidential investigation of the Commission rather than a hearing which might eventuate in an order.[9] The Commission's refusal to produce the record indicates that the request had been for a complete transcript of the hearing. It rests in the discretion of the trial court to issue an order to show cause why the complete transcript should not be produced, if it deems all of it necessary, or only so much as may fairly make it appear whether the testimony of petitioner before the Commission was a proper foundation for the amnesty claimed. This is not an instance of the inspection of notes or material gathered by a prosecutor for his own use.[10] What is sought is the production as evidence in the hearing on the plea in bar of the very foundation of the plea. We find nothing in this record to indicate the desirability of secrecy so far as the testimony of petitioner is concerned. The Government introduced in the Court of Appeals a purported transcript of petitioner's former testimony without asserting its confidential character then or in the motion and traverse below.

Finally the Government contends that the refusal to order the production of the testimony was not prejudicial. This argument presupposes that the offer to produce in the trial court and the actual production in the Circuit Court of Appeals was adequate. Otherwise we cannot

---

[9] Cf. *In re Securities & Exchange Commission*, 14 F. Supp. 417, 418; 84 F. 2d 316; reversed as moot, 299 U. S. 504.

[10] *People ex rel. Lemon* v. *Supreme Court*, 245 N. Y. 24; 156 N. E. 84; cf. *Rex* v. *Holland*, 4 T. R. (Durnford & East) 691.

know what the testimony was which is relied upon for the amnesty. We think that neither offer was an adequate proffer. In neither instance was the petitioner given an opportunity to cross-examine; no witness produced the transcript; it was not certified as a part of the record from the trial court or as a part of the records of the agency.[11] The record certified to the Circuit Court of Appeals is the record on which the appeal is to be heard. Criminal Appeals Rules VIII and IX.

The refusal to permit the accused to prove his defense may prove trivial when the facts are developed. Procedural errors often are. But procedure is the skeleton which forms and supports the whole structure of a case. The lack of a bone mars the symmetry of the body. The parties must be given an opportunity to plead and prove their contentions or else the impression of the judge arising from sources outside the record dominates results. The requirement that allegations must be supported by evidence tested by cross-examination protects against falsehood. The opportunity to assert rights through pleading and testimony is essential to their successful protection. Infringement of that opportunity is forbidden.[12]

*Other Objections.* As the case must be remanded, petitioner's objection to the three-year sentence on the conspiracy count is sustained without discussion. Criminal Code, § 37; 18 U. S. C. § 88. Frivolous objection is made to the indictment because it is endorsed "A true bill, Ernest W. Clarke, Foreman" instead of "Foreman of the grand jury." This contention is rejected.

Petitioner brings here for review his demurrer to the indictment and each count thereof. The Circuit Court of Appeals found the conspiracy count sufficient against

[11] Cf. R. S. § 882, as amended, 48 Stat. 1109.
[12] Cf. *Walker* v. *Johnston*, 312 U. S. 275.

an attack that, in charging a conspiracy to violate the Securities Act of 1933 by selling unregistered securities, the count failed to charge that the securities so sold were not of the class exempted from registration under section three of the Act and the rules and regulations thereunder. With this ruling we agree.[13] As the sentence under count eleven, the conspiracy count, was for as long a time as any of the other counts upon which concurrent sentences had been imposed, the Circuit Court of Appeals did not review the alleged deficiencies of the other counts.

Counts four and five are charged with the same fault as eleven. For a like reason we hold them good. Counts one and two describe the scheme to defraud and allege instances of the use of the mails. The brief of petitioner fails to raise any question deserving consideration as to their sufficiency and we see none. Petitioner challenges count three for failure to state the materiality of facts which the count charges were omitted, although they were required to be stated to avoid misleading purchasers.[14] But the count, after describing various omitted facts by paragraphs, ends such paragraphs with the allegation

"such fact being well known to said defendants and each of them at all times herein mentioned, and such fact being material in order to make the statements made by said defendants, in the light of the circumstances under which they were made, not misleading . . ."

The facts alleged were obviously material. Counts six to ten inclusive are based upon the mail fraud statute.[15] Petitioner's objection to these counts is that a later act, the Securities Act of 1933, makes it unlawful to use the

---

[13] *McKelvey* v. *United States,* 260 U. S. 353, 357.

[14] § 17 (a) (2), Securities Act of 1933; 15 U. S. C. 77q (a) (2).

[15] Criminal Code, § 215; 18 U. S. C. § 338.

mails to defraud by the sale of securities. His argument is that, in so far as the later act prohibits the fraudulent sale of securities by mail, it repeals by implication the provisions of the old mail fraud statute in so far as they cover securities. We see no basis for a conclusion that Congress intended to repeal the earlier statute. The two can exist and be useful, side by side.[16]

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

---

[16] Cf. *United States* v. *Rollnick*, 91 F. 2d 911, 918; *United States* v. *Montgomery*, 21 F. Supp. 770; *United States* v. *Alluan*, 13 F. Supp. 289.