## UNITED STATES v. LUMBER PRODUCTS ASS'N, Inc., et al.

No. 26977–S.

District Court, N. D. California, S. D.

Jan. 14, 1942.

Tom C. Clark and Wallace Howland, Sp. Assts. to Atty. Gen., Walter M. Lehman, of San Francisco, Cal., and Charles S. Burdell, of Los Angeles, Cal., Sp..Attys., for plaintiff.

Hugh K. McKevitt and Jack M. Howard, both of San Francisco, Cal., for defendants Ryan, O'Leary and Helbing.

ST. SURE, District Judge.

The defendants Dave Ryan, Walter O'Leary and Charles Helbing before the trial on the merits each filed a plea in abatement on the ground that the evidence upon which the indictment was found by the grand jury was obtained in violation of the constitutional right of the defendant not to be compelled to be a witness against himself in a criminal action; and, further, that by reason of being compelled to testify concerning the transactions, matters, and things upon which the indictment was found, they were entitled to immunity from prosecution on the charges contained in the indictment. 15 U.S.C.A. § 32.

The Government filed a demurrer to the pleas in abatement. The demurrer was sustained on the grounds (1) that the first point is not tenable in view of the immunity statute, 15 U.S.C.A. § 32; and (2) that the pleas failed to show by averments of fact that, were it not for the immunity statute, the defendants could have invoked their constitutional right against self-incrimination.

The plea in abatement of defendant Dave Ryan sets forth the particularities upon which the plea is based, as follows: "That he was interrogated and testified before said grand jury concerning the organization of the United Brotherhood of Carpenters and Joiners of America and all local unions chartered under said Brotherhood, how such organizations were established, set up and functioned; that he was further interrogated and testified concerning the identity of the officers of the Bay Counties District Council of Car- penters of the United Brotherhood of Carpenters and Joiners of America; that he was further interrogated and testified concerning his signature appended to the agreement of September, 1936, and described in the indictment herein; that he was further interrogated and testified concerning the existence of communications relating to the matters and things specified in said subpoena duces tecum."

The particularities relied upon by defendant Walter O'Leary are: "That he was interrogated and testified before said grand jury concerning the sending back to Los Angeles of certain ironing boards shipped from Los Angeles to the San Francisco Bay area and relative to the reasons for the return of said ironing boards; that this defendant was further interrogated and gave testimony concerning activities in the San Francisco Bay area in keeping out millwork manufactured under a lesser wage scale than that existing in the San Francisco Bay area; that this defendant was further interrogated and testified concerning the refusal to use or install products not bearing the union label and he was further interrogated and testified concerning his present attitude as to the propriety of keeping out of the San Francisco Bay area products without the union label or manufactured under a lesser wage scale than that prevailing in the San Francisco Bay area."

The basis of defendant Charles Helbing's plea in abatement is set forth as:

"That he was interrogated and testified before said grand jury relative to certain statements attributed to him in the minutes of a meeting during the year 1938, of said United Brotherhood of Carpenters and Joiners of America, Millmen's Union No. 42, and was questioned and testified concerning the meaning of such statements and the use of the word 'pledge' in connection with the agreement or agreements between such union and the defendant manufacturers in the above entitled proceeding and referred to in said indictment;

"That this defendant was further interrogated and gave testimony concerning the taking of certain so-called 'booster cards' to Jones Brothers, which cards fostered the use of local millwork as opposed to millwork manufactured outside of the San Francisco Bay area;

"That this defendant was further interrogated and testified concerning his acts

and conduct in connection with blocking the use of material in the San Francisco Bay area that did not carry a union label, and he was further required to give evidence concerning the union organization of millwork manufacturers in the states of Washington and Oregon."

At the conclusion of the Government's case at the trial, the said defendants orally moved for a reconsideration of the original pleas. At this time the defendants conceded that they were not entitled to a disclosure of the testimony of said defendants given before the grand jury (United States v. Goldman, D.C., 28 F.2d 424, 431; Mulloney v. United States, 1 Cir., 79 F.2d 566, 574; United States v. American Medical Association, D.C., 26 F.Supp. 429, 430), but requested that the Court read such testimony. Defendants cited the case of Edwards v. United States, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957, but the court, having in mind the confidential character of proceedings before a grand jury and the requirement of secrecy which guards its proceedings (Goodman v. United States, 9 Cir., 108 F.2d 516, 519, 127 A.L.R. 265), reserved its ruling on the motions. After the defendants were found guilty by verdict of the jury, the said defendants again moved orally for a reconsideration of their pleas.

Pursuant to said oral motions, the court read the transcript of the testimony of the said defendants given before the grand jury. The pleas in abatement were thereupon considered by the court on their merits in the light of the testimony given by the moving defendants before the grand jury. The question for the court's determination was whether such testimony, in view of all the circumstances of the case, was of such a nature as to bring the moving defendants within the purview of the immunity statute. Miller v. United States, 9 Cir., 95 F.2d 492; United States v. Herron, D.C., 28 F.2d 122.

The indictment alleges that certain employer groups and individuals and certain labor organizations and individuals unlawfully combined and conspired to restrain interstate trade and commerce in millwork and patterned lumber, in violation of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1. A number of contracts were offered in evidence, both by the Government and by the defendants. Those dated 1936 and 1938 had a clause providing in effect that no mill-

work or patterned lumber would be purchased and no work would be done on millwork and patterned lumber which was made at a wage scale lower than that prevailing under the contract. The contracts had a clause providing that nothing in the contracts should be interpreted as violating the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, or any other Federal statute. The defendants adduced testimony to the effect that the contracts were not intended to and did not effect any restraint of interstate commerce. The Government, on the other hand, introduced evidence of overt acts by and admissions of the alleged conspirators which established an unlawful restraint to the satisfaction of the jury.

Upon consideration of the grand jury transcript of the testimony of the defendants Dave Ryan, Walter O'Leary and Charles Helbing, the court makes the following Findings of Fact:

### As to Defendant David H. Ryan

I. Defendant Ryan appeared before the grand jury in response to a subpoena duces tecum served upon him calling for the production of certain documents and records of the Bay Counties District Council of Carpenters, an unincorporated voluntary association.

II. Defendant Ryan asserted his constitutional right against being compelled in a criminal action to be a witness against himself, and elected to stand on said constitutional right unless the Government granted him immunity from prosecution for or on account of any transaction, matter, or thing concerning which he should testify or produce evidence; and said defendant further asserted that the documents and records of the Bay Counties District Council of Carpenters called for by the subpoena duces tecum were not subject to subpoena under the constitutional guaranty against unreasonable search and seizure.

III. The grand jury presented said defendant Ryan to this court as contumacious; and said defendant thereupon, through his counsel, moved that the subpoena duces tecum theretofore served on him be quashed, vacated, and suppressed; and upon hearing had, this court denied said motions and ordered said defendant Ryan to produce the records and documents of the Bay Counties District Coun-

cil of Carpenters as called for in subpoena duces tecum.

IV. Defendant Ryan appeared before the grand jury and produced certain records and documents of the Bay Counties District Council of Carpenters, pursuant to subpoena duces tecum and the order of the court.

V. Defendant Ryan again asserted his constitutional right against being compelled in a criminal action to be a witness against himself and further asserted the constitutional right of the Bay Counties District Council of Carpenters against unreasonable search and seizure; and the Government refused to grant said defendant immunity by virtue of any testimony he should give or with regard to the records and documents he should produce pursuant to subpoena duces tecum.

VI. Defendant Ryan in his testimony identified through his signature thereon a certain document as a contract covering wages, hours, and working conditions, signed by the United Brotherhood of Carpenters and Joiners of America, Locals Nos. 42 and 550, and the Bay Counties District Council of Carpenters by David H. Ryan, Secretary-Treasurer, dated September 21, 1936; said defendant further testified that he was Secretary-Treasurer of the Bay Counties District Council of Carpenters; that it is customary for the Bay Counties District Council of Carpenters to approve all contracts of affiliated unions and for that reason the Bay Counties District Council of Carpenters appears as a signatory thereto; that the contract was submitted to the general office of the United Brotherhood of Carpenters and Joiners of America. Said defendant read paragraph 16 of said contract aloud and volunteered the statement that it was quite familiar to him.

VII. Defendant Ryan identified through his signature thereon a contract dated August 10, 1939 entered into between the Lumber Products Association, Inc., and the United Brotherhood of Carpenters and Joiners of America, Locals Nos. 42 and 550, and the Bay Counties District Council of Carpenters. He further testified that said contract was the result of arbitration; that it was never approved by the general office of the United Brotherhood of Carpenters and Joiners of America; that President Hutcheson of said United Brotherhood came to San Francisco in connection with this said contract.

VIII. Defendant Ryan was read paragraphs 17 and 18 of an agreement of wages, hours, and working conditions, dated December 19, 1938, which had been produced before the grand jury by another witness, between the cabinet manufacturers, the planing mill owners, and the affiliated unions of the United Brotherhood of Carpenters and Joiners of America, which said paragraphs read:

"XVII. In the interest of providing employment, it is agreed that no material will be purchased from, and no work will be done on any material or article that has been made under conditions unfair to members of the United Brotherhood of Carpenters and Joiners of America, or Employers of members of the United Brotherhood of Carpenters and Joiners of America signators hereto. The purchase, working and sales of the following products is excepted"—then follows a list.

"XVIII. The purchase and sale of the following products is excepted"—then follows a list.

"Nothing herein is to be interpreted as preventing the entire production and sale of any article in its completed state to any buyer. Nothing herein is to be interpreted as to in any way interfere with any business of the Federal Government, or that of an interstate common carrier, or any regulations of the Federal Trade Commission, or the Sherman Anti-Trust Laws."

Defendant Ryan testified that the above paragraphs were written at the suggestion of General President Hutcheson.

IX. Defendant Ryan testified that the signature of "J. F. Cambiano—Witness" appeared on the 1939 contract for the reason that the employers refused to negotiate unless a representative of the general office of the United Brotherhood of Carpenters and Joiners of America was present.

## As to Defendant Walter C. O'Leary

X. Defendant Walter C. O'Leary appeared before the grand jury in response to a subpoena duces tecum served upon him calling for the production of certain documents and records of the United Brotherhood of Carpenters and Joiners

of America, Local No. 550, an unincorporated voluntary association.

XI. Defendant O'Leary asserted his constitutional right against being compelled in a criminal action to be a witness against himself and elected to stand on said constitutional right unless granted immunity from prosecution for or on account of any transaction, matter, or thing concerning which he should testify or produce evidence; and the Government refused to grant said defendant O'Leary such immunity. Said defendant O'Leary refused to answer certain questions then asked of him before the grand jury.

XII. Defendant O'Leary, through his counsel, moved that the subpoena duces tecum theretofore served on him be quashed, vacated, and suppressed; and upon hearing had, this Court denied said motions and ordered said defendant O'Leary to appear before the grand jury and to produce the documents named in the subpoena.

XIII. Defendant O'Leary appeared before the grand jury and produced certain records and documents of the United Brotherhood of Carpenters and Joiners of America, Local No. 550, pursuant to subpoena duces tecum and order of the Court.

XIV. Said defendant O'Leary testified that he was business representative of the United Brotherhood of Carpenters and Joiners of America, Local 550.

XV. Defendant O'Leary identified the minute book of the United Brotherhood of Carpenters and Joiners of America, Local 550, which had been produced by said defendant; said defendant further testified from a notation in said minute book that a Mr. Edwards who sought permission to address a union meeting was connected with Wood Products, Inc.; that there was no discussion in the Union at that time or with Mr. Edwards regarding the so-called restrictive clause in the contract; said defendant further testified as follows concerning the membership and functions of certain committees referred to in said minutes: Conference Committee is composed of a representative of each local union and formulates the general policy of the unions with reference to demands as to hours and wages; the Negotiating Committee is composed of members representing the unions and the employers and negotiates agreements with reference to wages and hours; the

Observers Committee was appointed from Local Union 550 for the purpose of checking up on material being delivered during period of strike in 1938; the State Mill Committee is an unofficial body composed of as many delegates as can be induced to attend for the purpose of promoting uniform conditions over the State. Defendant O'Leary further testified that the Label League was used to promote the use of the union label; that the Building Trades meeting referred to a meeting of the Building Trades Council which was composed of representatives from all the building trades local unions; and that the so-called stabilization agreement was an effort over a two-year period to stabilize wages, hours, and working conditions in the six counties involved; that General President Hutcheson appeared during a Conference Committee meeting, shook hands, "had a little blah-blah there, and that is about all that amounted to"; that the Unions desired a uniform agreement in the counties of Marin, San Francisco, Santa Clara, Alameda, San Mateo, and Contra Costa.

XVI. Defendant O'Leary testified concerning a reference in the minutes to a local hardware store handling non-union ironing boards manufactured and shipped from Los Angeles to San Francisco, stating that a local manufacturer wished some special concession to meet the competition for Los Angeles, which was not granted.

XVII. Defendant O'Leary testified that the term "hot millwork" referred to millwork which did not bear a union label; that General President Hutcheson of the United Brotherhood of Carpenters and Joiners of America informed the local union that millwork bearing the union label had to be installed even if manufactured at a lower wage scale than that paid in San Francisco, regardless of the fact that the local union objected; that said label was so honored and no pickets were placed on such labelled material.

XVIII. Defendant O'Leary testified that during the course of the negotiations with the employer organizations during 1939 there was no discussion with regard to the so-called restrictive clause.

As to Defendant Charles Helbing

XIX. Defendant Charles Helbing appeared before the grand jury in response to a subpoena duces tecum served upon

him calling for the production of certain documents and records of the United Brotherhood of Carpenters and Joiners of America, Local No. 42, an unincorporated voluntary association.

XX. Defendant Helbing testified that he was business representative of the United Brotherhood of Carpenters and Joiners of America, Local 42. Said defendant identified the September, 1939 contract through his signature thereon, and testified that it was an agreement covering wages and hours with the shops and mills; said defendant identified the signatories to the said agreement, and testified that it is customary for wage contracts to come before the local, then the District Council of Carpenters, and then the General Office; he further testified that J. F. Cambiano is a representative of the General Office of the United Brotherhood of Carpenters and Joiners of America. Said defendant Helbing identified the journal of Local No. 42 and testified concerning an entry therein on a matter of a refund from the State Mill Committee. Said defendant Helbing then asserted a constitutional right against being compelled in a criminal action to be a witness against himself, unless granted immunity from prosecution for or on account of any transaction, matter, or thing concerning which he should testify or produce evidence; and the Government refused to grant said defendant Helbing such immunity; and said defendant Helbing refused to testify any further.

XXI. Defendant Helbing, through his counsel, moved that the subpoena duces tecum theretofore served on said defendant be quashed, vacated, and suppressed, and upon hearing had, this court denied said motions and ordered said defendant Helbing to appear before the grand jury and to produce the documents named in the subpoena.

XXII. Defendant Helbing appeared before the grand jury and testified that the minutes of the Building Trades Council were sent to Local No. 42 for its concurrence; that by unfair material was "meant only non-union material"; that Local No. 42 from time to time recommended to the Building Trades Council that firms not employing union men and working under union conditions be placed on the unfair list, and that when the men join the union the employer be removed from the unfair list. Defendant Helbing,

in response to a question concerning the Jones Hardwood Company, testified that he had told Mr. Jones "when you have doors coming in here, why, we will take it up"; and further testified that during the negotiations in 1937, he was not in San Francisco and took no part in any negotiations; and that he was not a member of the Conference or Negotiating Committees in 1938.

XXIII. Defendant Charles Helbing testified that the State Mill Committee had for its purpose the promotion of interests of the union organization. Said defendant further testified that the unions set a scale to try to meet the competition from the north; that no pickets were used to enforce the union label demand or desire of the unions; that no material that had a union label upon it was kept out of the local area in 1939.

XXIV. Defendant Helbing, upon being shown a notation in said minutes referring to a "pledge to mill owners to enforce stamp," testified that the word "pledge" was not "put down correctly" as he merely stated that action should be taken to secure the support of the carpenters to look for stamped material; in this connection said defendant further testified, "We don't make no pledge; our agreement shows no pledge of any kind. * * * It means that we wanted stamped material used in this locality; that is what it means."

■ The Supreme Court in Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, established the general principles governing the application of the immunity statute. "But the obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime." 227 U.S. at page 142, 33 S.Ct. at page 227, 87 L.Ed. 450. * * * "When the statute speaks of testimony concerning a matter it means concerning it in a substantial way, just as the constitutional protection is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law." 227 U.S. at page 144, 33 S.Ct. at page 228, 57 L.Ed. 450.

■ In considering the analogous problem of what testimony is under the protection of the Fifth Amendment to the Constitution, Mr. Justice Taft said in

Ex parte Irvine, C.C., 74 F. 954, 960: "* * * The true rule is that it is for the judge before whom the question arises to decide whether an answer to the question put may reasonably have a tendency to criminate the witness, or to furnish proof of a link in the chain of evidence necessary to convict him of a crime. It is impossible to conceive of a question which might not elicit a fact useful as a link in proving some supposable crime against a witness. The mere statement of his name or of his place of residence might identify him as a felon, but it is not enough that the answer to the question may furnish evidence out of the witness' mouth of a fact which, upon some imaginary hypothesis, would be the one link wanting in the chain of proof against him of a crime. It must appear to the court, from the character of the question, and the other facts adduced in the case, that there is some tangible and substantial probability that the answer of the witness may help to convict him of a crime. * * *" See, also, Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198.

From the Findings of Fact, therefore, it must be determined whether the testimony of each defendant had a direct tendency to incriminate or, on the other hand, whether such testimony had no more than a remote or speculative possibility of incrimination. Heike v. United States, supra; Mason v. United States, supra; O'Connell v. United States, 2 Cir., 40 F. 2d 201, 204.

■ The defendant Ryan produced papers of the Bay Counties District Council, an unincorporated labor association, and identified the same. The defendant O'Leary likewise produced documents of an unincorporated labor association, the United Brotherhood of Carpenters and Joiners of America, Local No. 550. O'Leary also identified the records produced. Similarly, defendant Helbing produced and identified documents of Local No. 42 of the United Brotherhood of Carpenters and Joiners of America. The production of the papers of an unincorporated association is not violative of the constitutional prohibition against unreasonable search and seizure. In re Local Union No. 550, United Brotherhood of Carpenters and Joiners of America, D.C., 33 F.Supp. 544, and cases therein cited. Testimony identifying the documents and auxiliary to the production of them is as unprivileged as are the documents themselves. United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229; United States v. Illinois Alcohol Co., 2 Cir., 45 F.2d 145, 149, certiorari denied 282 U.S. 901, 51 S.Ct. 214, 75 L.Ed. 794; United States v. Greater New York Live Poultry Chamber of Commerce, D.C., 34 F.2d 967, certiorari denied 283 U.S. 837, 51 S.Ct. 486, 75 L.Ed. 1448.

■ Each of the said defendants testified that he was an officer of his respective labor union. It cannot be said that the respective organizations to which the defendants belong were unlawful or that the holding of offices in such organizations was in any way contrary to law. United States v. Greater New York Live Poultry Chamber of Commerce, supra.

The said defendants testified as to the general set-up of the affiliated union organizations and the procedure for the approval of contracts concerning wages, hours and working conditions. Officers of the organizations and signatories to the wage contracts were identified by the defendants in their testimony. It is, of course, clear that the moving defendants herein cannot successfully urge that their testimony incriminated a third person, assuming that such testimony would incriminate, which fact does not appear in this case.

■ The remaining testimony of the said defendants before the grand jury related to legitimate activities of a labor union. All of this testimony concerned that which is sanctioned by law, and was, therefore, in no way incriminating. United States v. Hutcheson, 312 U.S. 219, 61 S. Ct. 463, 85 L.Ed. 788.

An analogous situation to the one presented by the pleas in abatement is found in the cases arising from similar pleas filed by various defendants in the antitrust prosecution by the United States against the Greater New York Live Poultry Chamber of Commerce. In United States v. Greater New York Live Poultry Chamber of Commerce, D.C., 33 F.2d 1005, a plea in abatement was filed by a defendant "on the ground that he had previously, in obedience to a subpoena duces tecum, testified before the grand jury under oath regarding his place of residence, business affairs of the slaughterhouse for live poultry which he was operating, and

his connection and identification with defendant Greater New York Live Poultry Chamber of Commerce, and respecting the books, records, and papers relating to his business and respecting the business of said corporate defendant." The demurrer to the plea was sustained.

A plea in abatement was filed by another defendant in the same prosecution. A trial before a jury was had. The defendant testified that he had appeared before the grand jury and was asked and answered questions concerning his connection with the local union, his methods of keeping books, the significance of certain figures and check marks in the book which he had produced, the conduct of the union meetings, and the minutes of the association. The Government's motion for a directed verdict at the conclusion of the trial was granted. The Court held that there was not a scintilla of evidence tending to show that the defendant was guilty of the crime charged in the indictment or of any other crime. United States v. Greater New York Live Poultry Chamber of Commerce, D.C., 34 F.2d 967.

It follows, therefore, as a conclusion of law that the testimony of the defendants Dave Ryan, Walter O'Leary and Charles Helbing given by them before the grand jury did not tend to and did not incriminate them, and did not tend to prove them guilty of the crime of which they were convicted by verdict of the jury. The pleas in abatement should be and they are denied on the merits.