**UNITED STATES v. EISELE et al.**

No. 70857.

District Court of the United States for the District of Columbia.

Oct. 27, 1943.

George E. McNeil, Asst. U. S. Atty., of Washington, D. C., and John D. Swartz, Sp. Asst. to Atty. Gen., for plaintiff.

Harold A. Kertz and Louis B. Arnold, both of Washington, D. C., for defendant Ernest A. Hough.

PINE, Justice.

Defendant Ernest A. Hough was indicted, arraigned, pleaded not guilty, and thereupon was granted leave within thirty days to withdraw said plea and demur to, or move to quash said indictment, or otherwise plead as he may be advised. Thereafter, pursuant to such leave, he withdrew his plea of not guilty and entered a demurrer, which was overruled, whereupon he filed a plea in bar, claiming immunity from prosecution under this indictment by virtue of the provisions of 15 U.S.C.A. § 77v(c).

To this plea in bar the United States filed a replication in which it denied that defendant claimed "a privilege against self-incrimination," denied that defendant was compelled to testify "after having claimed the privilege," and alleged that whatever claim was asserted, it was subsequently withdrawn and related only to matters which were not of an incriminatory nature.

Upon these issues a hearing was held, during which the parties, by their respective attorneys, entered into a written stipulation that the transcript of the record taken "In the Matter of the Southeastern

Industrial Loan Co.," relative to the testimony of defendant before the Securities and Exchange Commission, "is a true and accurate transcription of the testimony taken in the said hearing * * *."

Defendant is one of several defendants named in a 33 page indictment consisting of 19 counts. The first count requires over 18 pages of the 33 page indictment, and the remaining 18 counts incorporate, by reference, the allegations of the first count. Counts 1 through 7 charge that defendants devised a scheme to defraud, and for the purpose of executing the scheme used the United States mails, in violation of 18 U.S.C.A. § 338. Counts 8 through 18 charge that defendants, in the sale of securities, used the mails and by use of the mails did employ the scheme to defraud, referred to in Count 1, in violation of 15 U.S.C.A. § 77q. Count 19 charges that defendants conspired to commit an offense against the United States, namely to violate 18 U.S.C.A. § 338, and 15 U.S.C.A. § 77q.

15 U.S.C.A. § 77v(c), being part of the Securities Act of 1933, provides as follows: "No person shall be excused from attending and testifying or from producing books, papers, contracts, agreements, and other documents before the [Securities and Exchange] Commission, or in obedience to the subpena of the Commission or any member thereof or any officer designated by it, or in any cause or proceeding instituted by the Commission, on the ground that the testimony or evidence, documentary or otherwise, required of him, may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

The question for determination is whether defendant Hough acquired, under the above-quoted provision of the Securities Act of 1933, immunity from prosecution under this indictment by virtue of certain proceedings "In the Matter of the South-eastern Industrial Loan Company" before the Securities and Exchange Commission.

The transcript of record above referred to shows that defendant, being first duly sworn, was called as a witness on behalf of the Securities and Exchange Commission, and gave testimony in a proceeding before the Commission. The plaintiff's replication concedes that defendant appeared pursuant to a subpoena duces tecum. It furthermore appears that the proceedings were conducted by a trial examiner of the Securities and Exchange Commission. There is, therefore, no dispute that defendant was sworn, was called as a witness on behalf of the Commission, testified in a proceeding before the Commission, and appeared pursuant to subpoena.

Whether he "claimed his privilege against self-incrimination" as required by the above statute as a basis for immunity, is disputed. It appears that defendant gave testimony covering 50 pages of transcript. Then the attorney for the Commission referred to the registration statement of the Annapolis Industrial Loan Company, the hearing being "In the Matter of the Southeastern Industrial Loan Company," and asked defendant whether a statement in the Annapolis company's registration statement was false. It stated that defendant was retained by said company to conduct audits (Tr. p. 2020). He had given his consent to the statement being made therein (Tr. p. 2022) and in effect was asked whether his statement in a registration statement was false.[1] After defendant had answered that it was false, his counsel objected, which objection the examiner overruled. A few more questions were asked and answers given, and thereafter for approximately seven pages (Tr. pp. 2025 through 2031) the record is somewhat confused and ambiguous. It does appear therein, however, that defendant, after consulting his attorney, did state that he was claiming the privilege of not answering a certain question in regard to the Frederick Industrial Loan Company, and that his attorney stated, in answer to the examiner's question as to the ground for claiming his privilege, that he was without information as to the facts in the Frederick Industrial Loan Company matter, was unable to protect defendant in that proceeding, and that it may be the witness may incriminate himself "in

[1] 15 U.S.C.A. § 77x makes it a criminal offense wilfully to make an untrue statement of a material fact in a registration statement.

that cause." The question in respect of which the witness claimed the privilege was both improper and innocuous; it asked him to testify whether a certain paper writing (registration statement of the Frederick Industrial Loan Company) which was shown to him, contained certain statements. However, the colloquy thereafter between the examiner, the defendant's attorney, and the attorney for the Commission shows that the parties understood that the claim of the privilege against self-incrimination included at least any examination with reference to the Frederick Industrial Loan Company. For example, the attorney for the defendant stated that, "The witness may incriminate himself in that cause," obviously meaning the Frederick Industrial Loan Company case. The examiner stated that his "ruling" was that, "the Frederick case is germane to the issues here, and we are going right ahead and proceed on it." The attorney for the Commission stated, "The objection on the ground of incrimination was only with reference to Frederick," whereupon the attorney for the defendant stated that he was renewing and urging his "objection both as to Frederick and Annapolis." (Tr. pp. 2027, 2028, and 2029.)

Immediately after this colloquy and after the examiner had stated that he would "proceed" with the Frederick case, questions were asked which elicited an admission by defendant that he filed a consent to the use of his name in the filing of a registration statement by the Frederick Industrial Loan Company, which stated that defendant was retained by that company to conduct semiannual audits, the audits to consist of complete examination of all books, records, and accounts and certification thereof, and that it was his signature on the paper.

Looking at the whole record, I cannot escape the conclusion that there is sufficient therein to have apprised the examiner that defendant claimed his privilege at least as to questions relating to the Frederick Industrial Loan Company, and enough in the context to have enabled him to determine intelligently that there was a reasonable likelihood of incrimination if he permitted the examination to continue. Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198; United States v. Skinner, D.C., 218 F. 870; United States v. Goodner, D.C., 35 F.Supp. 286.

Accordingly, I find that defendant claimed "his privilege against self-incrimination" at least as to questions relating to the Frederick Industrial Loan Company as required by the above-mentioned statute as a basis for immunity.

As to the second point raised by the issues, namely whether the defendant was compelled to testify after having claimed the privilege against self-incrimination, I refer to the subpoena, the above-mentioned statute which provides that no person shall be excused from testifying on the ground that his testimony may tend to incriminate him, the claim of privilege above referred to, the examiner's statement thereafter made that he was "going right ahead and proceed on it," and the fact that questions were subsequently propounded and answers given in relation to the Frederick Industrial Loan Company.

In respect of the issue that the claim was subsequently withdrawn, the attorney for the defendant stated that he withdrew his objection, apparently to requiring the witness to answer at all, and then stated that, "The witness will answer." Of course he was obliged to direct the witness to answer, in view of the provisions of the statute requiring him to answer, in return for which he obtained, under the statute, immunity from prosecution for or on account of any transaction, matter, or thing concerning which he was compelled to testify after having claimed his privilege against self-incrimination.

There was some colloquy between the attorney for the defendant and the examiner in which the attorney referred to the Murdock case (apparently United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 64, 76 L.Ed. 210, 82 A.L.R. 1376) and said, ambiguously, "That is moot," and the examiner stated, ambiguously, "You have withdrawn it." Also there was a self-serving declaration by the examiner as to what the record would show as to his intentions, had "the claim been urged" (Tr. pp. 2030, 2031). I cannot spell out of this colloquy a withdrawal by defendant of the claim of privilege against self-incrimination. In addition, it should be noted that these statements occurred after defendant had given incriminating testimony.

The issue that the claim of privilege related to matters which were not of an incriminatory nature, must likewise be

decided against the United States. The indictment alleges in each count, directly or by incorporation, that defendants, including this defendant, devised a scheme to defraud, and that it was part of this scheme that defendants would cause certain corporations, including the Frederick Industrial Loan Company, to be described as the Southeastern System; that defendants would cause this defendant to become the auditor of this System; that defendants would cause to be organized the Frederick Industrial Loan Company; that the persons to be defrauded would be falsely informed that defendant was an independent Certified Public Accountant. The defendant was required to give testimony on certain of these points, which are alleged to be a part of the scheme to defraud. It would therefore appear that he is now being prosecuted for and on account of a transaction, matter, or thing concerning which, in a substantial way,[2] he was compelled to testify after having claimed his privilege against self-incrimination. Defendant's identity and relationship to these matters, alleged to be a part of the fraudulent scheme, are of primary importance in the proof of his criminality.[3]

■ The United States places reliance on United States v. Murdock, supra. That case, in my judgment, is inapplicable, because the witness therein "had in mind 'the violation of a State law and not the violation of a Federal law,'" which, under the ruling of that case, is insufficient to justify a refusal to answer, whereas in the case at bar there is no room for doubt that the defendant had in mind and feared prosecution under a Federal statute, namely the Securities Act of 1933, and that the inquiries were being made to discover evidence of its violation.

The foregoing views are further borne out by the whole tenor of the proceedings. Defendant was subpoenaed as a witness for the Commission in an administrative proceeding before it, and, without warning of any kind, found himself confronted by an inquisition determined to wring from him evidence on which to base a prosecution against him. He was first lulled into believing he was a government witness, and after 50 pages of testimony, suddenly became suspicious or aware that he was a prospective defendant. Any inartificiality or inexactitude in making the claim of privilege should be viewed in the light of these circumstances; and the record might well be construed to support the view that all subsequent questions of a similar character were embraced within the claim[4] unless the defendant is to be held to a rigid formalism. Defendant's testimony after the claim of privilege, covering approximately 300 pages, relates to transactions, matters, and things covered by the indictment. It was the examiner's duty, when defendant claimed this privilege, to determine from the character of the questions asked and the circumstances of the inquiry, whether there was a likelihood that the answers might be incriminating, and if there was such likelihood, it was his duty to determine whether he wished to exchange immunity for testimony. If he did not wish so to do, he should have stopped further inquiry. He elected to take the other course.

No question is raised as to the propriety of the plea under the authority of United States v. Murdock, supra, and it is doubtful whether such question properly could be raised, as the case at bar, unlike the Murdock case, is not yet at issue, the plea of not guilty having been withdrawn by leave of Court. Nor is any question raised by the parties as to a trial of the issues by the Court.

For the foregoing reasons, the Plea in Bar will be sustained, and judgment will be entered accordingly.

---

[2] Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450.

[3] Edwards v. United States, 312 U.S. 473, 479, 61 S.Ct. 669, 85 L.Ed. 957.

[4] Trans. p. 2030.