CAPITAL FUNDS, INC., Austin E. Gatlin and Mrs. Erma S. Gatlin, Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 17838.

United States Court of Appeals Eighth Circuit.

July 12, 1965.

Thomas Harper, Fort Smith, Ark., for petitioner.

Philip A. Loomis, Jr., Gen. Counsel, Securities and Exchange Commission, Washington, D. C., Walter P. North, Associate Gen. Counsel, Washington, D. C., and Roy Nerenberg, Attorney, Securities and Exchange Commission, Washington, D. C., for respondent.

Before VAN OOSTERHOUT and RIDGE, Circuit Judges, and HENLEY, District Judge.

RIDGE, Circuit Judge.

Petition for review of an administrative order of the Securities and Exchange Commission pursuant to § 25(a) of the Securities Exchange Act of 1934,

15 U.S.C.A., § 78y(a). That order denied the application of petitioner Capital Funds, Inc. (hereinafter Capital), for registration as a broker-dealer; and found petitioners Austin E. and Mrs. Erma S. Gatlin each to be a cause thereof. The denial of registration was pursuant to § 15(b) of the "Exchange Act," 15 U.S.C.A. § 78*o*(b). Petitioners seek reversal thereof on the grounds that the findings of the Commission to the effect that the securities in question were not exempt under § 3(a) (2) of the Securities Act of 1933 (15 U.S.C.A., § 77c(2)), is not supported by substantial evidence and such order is otherwise generally contrary to applicable law. We shall treat with each such matter in the course of this opinion.

## THE FACTS

Capital was originally incorporated in Oklahoma in March 1961, and was registered as a broker-dealer under the laws of that State. Mr. and Mrs. Gatlin were, at all times here considered, officers, directors and principal stockholders of Capital. While operating in Oklahoma, Capital engaged both in the loan business and as a dealer in securities, having been the underwriter of at least one unregistered intrastate stock offering in that State. At a later time, Capital opened an office in Arkansas and qualified as a securities dealer under the laws of that State.[1] Mr. Gatlin testified that Capital then discontinued its securities business in Oklahoma. However, the Commission found as a fact that it did not do so, but subsequently operated as an unregistered interstate securities dealer in Oklahoma, in relation to 1,000 shares of Peoples Loan & Investment Company stock, as hereinafter mentioned, which was one of the violations of the federal securities act, supra, relied on by the Commission in denying Capital's application for registration.

It appears, between April and December 1962, Capital acted as underwriter for a public offering of 60,000 shares of Peoples Loan & Investment Company (Peoples) stock, on a best efforts basis. Peoples then was an industrial loan company organized under Arkansas law, and Mr. and Mrs. Gatlin were officers and directors thereof. The offering was purportedly limited to residents of Arkansas; thus the Gatlins' claim that it was one falling within the intrastate exemption of § 3(a) (11)[2] of the Securities Act of 1933. Consequently, no compliance was made by petitioners with the registration requirements of § 5 of the Act, supra. ( 15 U.S.C.A., 77e). However, the Commission found that, on at least two separate occasions, a total of 1,000 shares of Peoples stock was sold by Capital to known residents of Oklahoma. Capital asserts such stock was first subscribed for by one Edwards, one of its salesmen, a resident of Arkansas, who resold it in a matter of days to the two non-residents of Arkansas, after his subscription therefor, upon discovering that he could not pay for it. No subscription form signed by Edwards for such stock was ever produced. Such a form signed by one of the Oklahoma purchasers was produced. The record reflects that payment for the stock was made by the two Oklahoma residents direct to Peoples. Capital's explanation therefor was that these payments were made to satisfy the promissory note (not produced) given by its salesman Edwards to pay for his stock subscription. However, the stock record of Peoples reveals that a stock certificate was ostensibly issued to Edwards, the salesman, in June, after payment from the Oklahoma purchasers was received, but the same bears a higher number than those on the certificates issued to the two Oklahoma residents in July and August.

An additional reason for the denial of Capital's broker-dealer's registration was a finding by the Commission that Mr. and Mrs. Gatlin each was a cause thereof * * * because in March 1957 to August 1958, they were partners in the firm of Justice and Shuler, in

---

1. Title 67, Chapter 10, Ark.Stats., 1947, Anno.

2. 15 U.S.C.A. § 77c(a) (11).

Florida, and while so engaged violated the Securities and Exchange Act, ante, concerning a public offering of the securities of Anchorage Mortgage Company, a Florida Corporation. At that time, Mrs. Gatlin (nee Shuler) was an officer and director, and Mr. Gatlin was an employee, of the firm of Justice and Shuler. The violation also involved an interstate sale of securities in relation to a purportedly intrastate offering. In that transaction, the Commission found that a Florida resident, being desirous to purchase Anchorage stock for a relative living in another state, was allowed to subscribe therefor in her own name, with the understanding that she could later have the stock transferred to the name of her relative. This was in fact done, and the Commission asserts this to be a previously found violation of the Securities Act by Mr. and Mrs. Gatlin.

Finally, the denial of Capital's registration was also premised on a statement made in its application for broker-dealer registration, to the effect that a Mr. Littlejohn was a principal stockholder in Capital, when in fact it was established before the Commission that he had sold his stock one month before the filing date. The Gatlins alleged that this was an inadvertent error, arising from the fact that the application was prepared by counsel and executed by them without first inspecting it. Primarily, it was on the basis of the above facts found by the Commission, of prior violation of the Exchange Act, ante, that it held it would not be in the public interest to grant registration to Capital as a broker-dealer.

Petitioners' position in this review proceeding is twofold * * * first, they attack the various findings of the Commission as not supported by substantial evidence; and, second, assert that regardless of the nature of the offerings of Peoples stock as inter- or intrastate, an exemption therefor exists under § 3 (a) (2) [3] of the Securities Act, as Peoples is organized under the banking laws of the State of Arkansas and is subject to supervision by the Bank Commissioner of that State.

Considering the factual finding of the Commission dealing with the interstate character of Peoples' offering; * * * we note first, that by virtue of the terms of the Exchange Act, 15 U.S. C.A., § 78y(a), the factual findings of the Commission regarding that issue, if supported by substantial evidence, are conclusive. This effectively limits the scope of our review to the question of substantial evidence. Barnett v. United States, 319 F.2d 340 (8 Cir., 1963). This means that the findings of the Commission here will not be disturbed if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Archer v. S. E. C., 133 F.2d 795 (8 Cir., 1943). Viewed in this light, it is apparent that the conclusion of the Commission that 1,000 shares of Peoples stock was sold in interstate commerce as part of the purportedly exempt intrastate offering, is adequately supported by the evidence. Referring to the facts as outlined above, it appears that such transactions were with Oklahoma residents who in all respects dealt direct with Peoples, the same as it did with other subscribing purchasers, i. e., as subscription form was executed by the Oklahoma purchasers and payment was made directly to Peoples for the stock, with exception of the alleged intervention of a prior sale of the same stock to Edwards, the Arkansas resident salesman. No documentary evidence of any such prior sale was brought forth, except for a stock certificate purportedly issued to Edwards, which reasonably would not, in the nor-

---

3. 15 U.S.C.A., § 77c(a) (2):
   " * * * the provisions of this sub-chapter shall not apply to * * * (2) Any security issued or guaranteed by * * * any banking institution organized under the laws of any State

the business of which is substantially confined to banking and is supervised by the State * * * banking commission or similar official * * *."

mal course of issuing numbered certificates, have been issued to him before the time it appears those certificates, ante, were issued to the Oklahoma purchasers. Hence it cannot be said there is no basis in fact appearing in the record of this case to support the Commission's findings of fact as made in respect to that transaction. The only explanation offered by petitioners for the anomaly established as to the above matter was a vague claim that blocks of certificates were issued at a single time on salesmen's orders without any preference being given to the chronological order of the subscriptions. The record reflects that Edwards, the salesman, first testified that he was paid a commission on the sales of the stock made to the two non-resident purchasers, but he later changed his testimony when pressed on that issue.

█ We think it clear that the evidence here more than adequately supports the conclusion of the Commission, that there was in fact no bona fide sale of the stock above considered to an Arkansas resident, and that, on the contrary, the Commission could reasonably have inferred the device offered to establish that fact was merely a subterfuge in order to effect an interstate sale. Applicable law is clear that a finding to the effect that any part of an issue being offered or sold to a non-resident is sufficient to deprive the entire issue of the benefit of the exemption as here claimed. S. E. C. v. Los Angeles Trust D. & M. Exch., 186 F.Supp. 830 (S.D. Calif., 1960), aff'd 285 F.2d 162 (9 Cir., 1960); S. E. C. v. Hillsborough Invest. Corp., 173 F.Supp. 86 (D. New Hampshire, 1958), aff'd 276 F.2d 665 (1 Cir., 1960). cf. Securities Act Release No. 4434, 26 F.R. 11896.

█ We turn to petitioners' contention that, regardless of the intrastate exemption, the issue here was exempt under § 3(a) (2), supra, as a banking institution. The burden of proving such an exemption from the registration provisions of the Act rests on the party claiming the benefit of the exemption, and the terms of the Act are to be strictly construed against the claimant. Edwards v. United States, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957 (1941); S. E. C. v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); S. E. C. v. Sunbeam Gold Mines Co., 95 F.2d 699 (9 Cir., 1938); Gilligan, Will & Co. v. S. E. C., 267 F.2d 461 (2 Cir., 1959); S. E. C. v. Culpepper, 270 F.2d 241 (2 Cir., 1959). The exemption claimed is only applicable to the securities of a "banking institution * * * the business of which is substantially confined to banking *and* is supervised by the State * * * banking commission or similar official." § 77c(a) (2). (Emphasis added.) To be a banking institution for the purposes of such exemption it appears two qualifications are necessary * * * *organization* and *supervision* under the state banking authority, and a business *"substantially confined to banking."* § 77c(a) (2), supra.

█ The first such requirement, ante, perhaps is satisfied in the case at bar as industrial loan institutions such as Peoples are organized under Title 67 of the Arkansas Statutes, entitled "Banks and Other Financial Institutions," (67–1001, et seq., Ark.Stats., 1947, Anno.) and by virtue of 67–1008 thereof they are subject to the supervision of the State Bank Commissioner. The question remains, however, whether or not the business of such industrial loan institutions is "substantially confined to banking." This presents a question of federal law and is a question particularly within the province of the federal courts, as any determination thereof is necessary to the construction of the exemption provisions of the Securities Exchange Act, supra. (cf.) S. E. C. v. Variable Annuity Life Ins. Co., 359 U.S. 65, 79 S. Ct. 618, 3 L.Ed.2d 640 (1959). Hence we are not bound by particular state characterizations, as petitioners here proffer, although such are entitled to great respect.

It appears from the record that Peoples was authorized by statute[4] to engage in two activities, i. e. to make secured loans and to issue interest-bearing "investment certificates, contracts or agreements." As noted in the prospectus for the stock issue in question, "The general business conducted by the Company is, the loan of money on first and second mortgages * * *." Thus it appears that the primary business of Peoples was the loan business, with a secondary aspect, the issuing of investment certificates. The Arkansas Statute under which Peoples is organized states:

"All such institutions operating under the provisions of this Act shall so distinguish their operations and so qualify them as to not perform any of the functions of a Commercial Bank, Savings Bank or Trust Company, outside of the specific authority provided for their operation under this Act." 67–1003, Ark.Stats., 1947, Anno.

This appears to create a clear distinction between industrial loan companies and banks under Arkansas law and to agree with applicable law to the effect that merely performing some banking functions, as Peoples does, does not constitute engaging in the banking business. See, 10 Am.Jur.2d, Banks, § 3; 9 C.J.S. Banks & Banking § 1c; State of Kansas ex rel. Boynton v. Hayes, 62 F.2d 587 (10 Cir., 1932). Further support for such proposition under Arkansas law is found in 67–701, which makes it unlawful for Peoples to use the words, "bank", "banking" or "banker" in its name.

That the performance of some banking functions does not necessarily constitute engaging in the banking business seems to be generally accepted. In this regard, see Jackson Finance & Thrift Co. v. C. I. R., 260 F.2d 578 (10 Cir., 1958). There the question arose under the Excess Profits Tax of 1950, and for its solution required a determination of whether or not industrial loan corporations under Utah law were engaged in the business of banking as defined by § 438(g) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 104. In holding that they were not, the Court stated:

"* * * it would be unrealistic not to note the marked similarity in business procedure between the intake of funds by a bank through savings deposits and that of the taxpayers (industrial loan companies) through the issuance of the thrift certificates. But it would be equally unrealistic not to note that such similarity is limited to form and does not exist either in law or fact." (Par. added.) 260 F.2d, l. c. 582.

The Court went on to draw a distinction between the two types of "deposits," characterizing the mere intake of money by an industrial loan corporation as an investment by the depositor, while the deposit of funds in commercial bank savings accounts is primarily for the purpose of safe-keeping. It is noted that this distinction finds support in the definition of "bank" contained in Smith v. Kansas City Title & T. Co., 255 U.S. 180, 210, 41 S.Ct. 243, 65 L.Ed. 577 (1921), that is, "* * * a bank is a moneyed institution to facilitate the borrowing, lending and *caring for* money." (Emphasis added.) l. c. 210, 41 S.Ct. l. c. 249. The Court in Jackson did not consider the alternate function of such industrial loan institutions, the making and discounting of loans in various forms, but it is clear that such activities in themselves do not constitute banking business, any more than any other isolated incidence of banking activity. Chase & Baker Co. v. National Trust & Credit Co., 215 F. 633 (N.D.Ill., 1914); Oregon & W. Trust Inv. Co. v. Rathburn, Fed.Cas.No.10,555 (D.Or., 1877); Meserole Securities Co. v. Cosman, 253 N.Y. 130, 170 N.E. 519 (1930); Brenham Production Credit Ass'n v. Zeiss, 153 Tex. 132, 264 S.W.2d 95 (1954).

We think it clear that although institutions such as Peoples may en-

4.  67–1001, 1604, Ark.Stats. 1947, Anno.

gage in some activities normally associated with the banking business there are important distinctions which take them out of the sphere of banking institutions as that term is used in § 3(a)(2) of the Securities Act, supra. This is particularly so in the instant case where the statute under which Peoples is organized specifically denies to it the functions of a commercial bank. This being so, it is apparent that petitioners were entitled to no exemption as a bank under § 3(a)(2) of the Securities Act and the validity of the offering here must stand or fall on the inter- or intrastate nature of the Peoples offering.

Considering the other findings of the Commission in the case at bar, it appears that each is adequately supported by substantial evidence and thus not subject to interference on appeal. As to the situation concerning the prior violation of the law in regard to the sale of the securities of Anchorage Mortgage Company in 1957–58, the resident purchaser who was party to the subterfuge testified in terms which left no doubt that a scheme to effect an unregistered interstate sale was perpetrated. The only arguments on this point by petitioners are that such evidence is irrelevant as to Capital, and, secondly, that the Commission investigated the Anchorage situation at that time but took no action, apparently intimating that it should now be estopped to raise the irregularity. The first point is answered simply by the terms of § 15(b) of the Securities Exchange Act, supra, which provides that registration may be denied if it is found that any officer or controlling person of the broker-dealer, whether *prior* or subsequent to becoming such, has willfully violated the securities laws. In this connection, willfulness means only the intentional commission of the act, no intention to violate the law is necessary. Tager v. S. E. C., 344 F.2d 5 (2 Cir., 4/12/65). Thus a prior violation on the part of the Gatlins was directly relevant to a consideration of Capital's application.

The second point also runs afoul of a specific portion of the Act, § 26, 15 U.S.C.A., § 78z, which provides:

"No action or failure to act by the Commission * * * shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein * * *."

In addition, it may be taken as settled that the Commission and its agents may not "waive" violations of federal law, nor may estoppel be raised against the Commission. S. E. C. v. Culpepper, supra; S. E. C. v. Morgan, Lewis & Bockius, 209 F.2d 44 (3 Cir., 1953); Mines and Metals Corp. v. S. E. C., 200 F.2d 317 (9 Cir., 1952).

The final point raised by petitioners deals with the finding of a misstatement of material fact in the application of Capital for registration. There can be no doubt that the fact allegedly misstated was so in fact, but petitioners argue that it was only a minor defect, and, secondly, that they should be excused because the application was prepared by counsel and not read by the individual petitioners. It will be remembered that the fact in issue was a statement that a certain person was a principal stockholder when in fact he had sold his stock one month before the filing date of the application. It is apparent, as contended by the Commission, that the correct disclosure of the major stockholders and controlling persons of an applicant is more than a "minor" point, indeed it is most important to the proper administration of the Act. (cf.) Financial Counsellors, Inc. v. S. E. C., 339 F.2d 196 (2 Cir., 1964). It is, of course, no excuse that the application was prepared by counsel and not examined by the Gatlins before executing it. The Whitehall Corporation, 38 S.E.C. 259 (1958); Peoples Securities Co., 39 S.E.C. 641 (1960). Such a holding would make it completely impossible to enforce the disclosure requirements of the Act. Clearly, the statutory responsibility for accurate disclosure is not to be avoided by the de-

vice of an agent preparing the application.

As findings of the Commission are not to be disturbed unless clearly erroneous, New York Trust Co. v. S. E. C., 131 F.2d 274 (2 Cir., 1942), and we have noted that the findings in the instant case are supported by substantial evidence and no error appears, it follows that the denial of Capital's application was proper.

Affirmed.