## SECURITIES AND EXCHANGE COMMISSION

v.

## HILLSBOROUGH INVESTMENT CORPORATION, Roger M. Mara, Charles Samra.

### Civ. A. No. 1965.

United States District Court
D. New Hampshire.
Dec. 11, 1958.

James E. Dowd and William M. Prifti, Securities and Exchange Commission, Coleman Silbert, Boston, Mass., for plaintiff.

Wiggin, Nourie, Sundeen, Nassikas & Pingree, Paul E. Nourie and Hedley G. Pingree, Manchester, N. H., for defendant Charles Samra.

McLane, Carleton, Graf, Greene & Brown, Stanley M. Brown, Manchester, N. H., for defendants Hillsborough Inv. Corp. and Roger M. Mara.

CONNOR, District Judge.

This is a motion filed by the Securities and Exchange Commission for a preliminary injunction against the defendants. Jurisdiction is founded on section 20 (b),[1] (15 U.S.C.A. § 77t(b)), and section 22(a), (15 U.S.C.A. § 77v(a)). The complaint alleges that the defendants have been and are now offering for sale, through the facilities of interstate commerce, certain issues of securities for which no registration statement has been filed as required by section 5(a), (15 U.S.C.A. § 77e(a)). The plaintiff claims that the exemption to section 5 in section 3(a) (11), (15 U.S.C.A. § 77c(a) (11)), allowing sales of unregistered securities solely to residents of a state where the issuer is doing business, is not available to the defendants because they have sold certain securities to non-residents. It is claimed that if a single offer is made to a non-resident, the exemption is inapplicable and the entire issue is illegal, including past and future intrastate sales, even to residents, of securities of that issue. Accordingly, the plaintiff seeks to enjoin the defendants from offering for sale, or selling or carrying, through the facilities of interstate commerce, any of the issues in question, or any other securities, unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities.

No claim is made, nor evidence offered, tending in any way to indicate that the securities in question are unsound investments for the public, or that full disclosure as required by the New Hampshire "Blue Sky" law, RSA 421:6, has not been given.

The defendants first deny that a single offer of an unregistered security to a non-resident makes the entire issue illegal; second, they claim that, under the facts of this case, the court in its discretion should deny the motion.

From the evidence, it is clear that several sales of Hillsborough's securities, the Class B Common, the Class C Common, and the 7% Registered Term Notes, 1955 and 1957 series, were made to non-residents, either directly or by listing the security in the name of a resident for thirty days, after which transfer was made to the non-resident. No sales of the Preferred shares were made to non-residents.

Examination of section 3(a) (11), its legislative history, together with various rulings in Securities and Exchange Commission and Court of Appeals cases, leads to the conclusion that in order to qualify for the intrastate exemption in section 3(a) (11), the entire issue must be offered and sold only to residents. See also, Securities Regulations, by Louis Loss, page 375, footnote 247. Since in this case sales were made to non-resi-

1. References to this and other sections not designated as being in Title 15 are to the Securities Act of 1933, as amended.

dents, future sales of securities from the same issues may not be made through the mails or facilities of interstate commerce even to residents unless a registration statement is filed with the Securities and Exchange Commission.

It was the opinion of general counsel for the Securities and Exchange Commission, Securities Act Release No. 1459 (1937), that "since under section 3(a) (11), the exemption is applicable only if the *entire issue* is distributed under the circumstances specified, any such sales to a non-resident in connection with the distribution of the new issue would destroy the exemption as to all securities which are a part of that issue."

■ In line with Securities and Exchange Commission v. Ralston Purina Co., 1953, 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494, the burden of proof is on the issuer who would plead the exemption. No reason has been suggested why the broad language of section 3(a) (11) should exempt issues, where some allegedly sporadic and unintentional sales have been made to non-residents, provided that the remainder are sold only to residents.

It is clear from the Committee Reports to the 1954 amendment to section 3(a) (11) (Senate Report No. 1036, House Report No. 1542), that "the exemption provided by this section of the act has not been considered available unless the *entire issue* of securities was offered and sold exclusively to persons domiciled in the one State." [Emphasis added.] U. S. Code Congressional and Administrative News 1954, pp. 2973, 2995.

Loss on Securities Regulations, page 375, footnote 247 states: "In view of the definition of 'sale,' an offer to a nonresident may well destroy the exemption for the entire issue even if no actual sales are made to nonresidents."

This idea that a single sale to a nonresident destroys the exemption, is supported in Shaw v. United States, 9 Cir., 1942, 131 F.2d 476, 480, which rejected the appellant's contention that each sale or exchange of originally issued shares of a common character is a separate issue. The court stated that the word "issue" includes "all the shares of common character originally though successively issued by the corporation." This thought lends impetus to the notion that even future sales of securities already issued are not exempt if other securities of the same issue are not exempt.

In an unreported case in the District Court of Washington, affirmed *sub. nom.* Hunt v. Securities Exchange Commission, 9 Cir., 1947, 158 F.2d 981, defendant and the S.E.C. signed a consent decree, enjoining the defendant from using the mails or facilities of interstate commerce to sell securities. Later the defendant was prosecuted for and convicted of contempt apparently because of *intrastate* sales by means of the mails, as well as because of sales to non-residents. The district judge stated:

The statute is definite that the mails are not to be used except under certain special circumstances. One of the special circumstances was that the entire issue was sold in one state by a seller in that state to persons residing in that state. The exemption was not for an issue which was largely within the state.

See also, In the Matter of Universal Service Corporation, Inc., Securities Act Release No. 3748 (1957).

■ The defendants argue that there were no sales to non-residents in cases where the securities were first issued to residents, who, after a thirty day waiting period, transferred them to non-residents. Such a procedure is in reality a sale to a non-resident. The opinion of general counsel, Release No. 1459, supra, advocates that if the exemption is to be available, it is required that the securities at the time of *completion of ultimate distribution* shall be found only in the hands of investors resident within the state. This view was followed by the Securities and Exchange Commission in the Brooklyn Manhattan Transit Corporation case, 1 S.E.C. 147 (1935).

In Stadia Oil & Uranium Co. v. Wheelis, 10 Cir., 1957, 251 F.2d 269, 275, sales of securities to residents, followed shortly thereafter by resales to non-residents, were held to be a circumvention of the law.

It is accordingly concluded that, prior to the completion of ultimate distribution to security holders, any resale of securities by residents to non-residents, under an arrangement where the resident has no intention of holding for investment, but buys as a straw on behalf of a non-resident with a view to transfer to the non-resident in the near future, is a devious and futile attempt to acquire the exemptive benefits of section 3(a) (11). And it is concluded that in this case, the thirty day transfer arrangements did not satisfy the terms of the exemption.

██ Any future sales, therefore, of the securities or notes of the Hillsborough Investment Corporation (except for the Class A Common and the Preferred shares, none of which were offered or sold to non-residents), through the facilities of interstate commerce or by the mails, without registration, are illegal. It remains to determine whether an injunction should issue.

Taking first the case of the Hillsborough Investment Corporation and Roger M. Mara, its treasurer and general manager, the evidence indicates that the defendants caused advertisements to be publicized via newspaper, which limited the offerings to residents of New Hampshire. A few advertisements, however, contained no such limitation. The testimony indicates that at least a dozen sales were made to non-residents. In some instances, the securities were listed in the name of a resident and after thirty days, transferred to the non-resident. The total amount of securities sold to non-residents could not have exceeded $100,000 out of a total of $1,021,390 issued capital and long term notes.

Mara testified that the corporation has no intention to sell securities interstate in the future, and no present intention to sell any at all. It is claimed that Hillsborough is actually buying in its securities, having stopped active sales efforts in June of 1958, prior to the S.E.C. investigation. There is evidence that during the month of September, 1958, Hillsborough bought back approximately $100,000 of its securities. However, a great deal of securities remain unsold. The balance sheet shows unsold 880 shares of 6% Preferred, par $100, unissued, and 188 treasury shares of the same, 802 treasury shares, par $100, of Class B Common, 26,761 shares of Class C Common, par $10, and 6,119 treasury shares of the same. A substantial portion of the 1957 notes remains unsold. A few sales of Hillsborough securities were made as recently as September, 1958.

Upon this state of the evidence, it is concluded that an injunction should issue, restraining the defendants, Hillsborough Finance Corporation and Roger M. Mara, from using the facilities of interstate commerce or the mails to sell or offer to sell the 6% Preferred shares, including treasury shares, the Class B Common treasury shares, the Class C Common, including treasury shares, and the 7% Notes, 1955 and 1957 series, whether to residents or non-residents unless and until these issues are registered. It is noted that the treasury shares are deemed to be part of the "issue" of the original shares within the meaning of section 3(a) (11). It is also noted that, even though there is no evidence of offers or sales of the Preferred shares to non-residents, the injunction covers the Preferred shares because of the possibility of future sales to non-residents.

The principal reason for this order is that further sales (except for sales of Preferred shares) would be a violation of section 5, and the defendants, because of the large amount of securities authorized but unissued, are apt to make additional sales. Nothing in this opinion is intended either to approve or disapprove of the quality, from an investor's point of view, of the securities of the defendant Hillsborough.

The injunction asks that the defendants be enjoined from selling "other securities," but since there is no evidence of sales of other securities to non-residents, this request is denied.

██ The case against Charles Samra assumes different aspects. Samra was a salesman for Hillsborough and made a few sales to non-residents. One transaction was a sale to a Lowell, Massachusetts, resident who read of the securities in a New Hampshire newspaper, another to a Maine resident whose name had been given to Samra by Hillsborough's supervisor, a third to a brother-in-law, and the last was a $1,000 certificate put in the name of a brother and himself jointly as a gift to his new-born nephew.[2] Some offers were made to non-residents who did not buy. Samra has since resigned from Hillsborough and expects to take a post with a competitor. He is, therefore, not likely to sell any of the Hillsborough securities. He is one of the incorporators of this competitor and it was represented that he might become a director.

It is also represented that if Samra is enjoined by this court, his value as an employee to the new company would be questionable and he would not be acceptable to it insofar as any active participation in the company is concerned. The reason for this is that Regulation A, which exempts issues of less than $300,000, under certain conditions, is inapplicable if any of the directors, promoters, or certain others are subject to any order, judgment or decree of any court enjoining him from engaging in any conduct. (Rule 252(d) (2)). It would seem inequitable in the circumstances of this case, to interfere with a man's livelihood because of a few violations of the Securities Act where there is absolutely no evidence that any of the investing public was harmed. It should be made clear, however, that Samra's actions in selling to non-residents indirectly through resident conduits were illegal and any future sales of unregistered securities in violation of section 5 will invoke prompt sanctions. Further, any attempt on the part of the other two defendants to make sales of their securities through the mails or facilities of interstate commerce in violation of section 5, by means of Samra, in circumvention of the injunction, could be considered a serious violation of the court order. It is my view that jurisdiction over the defendant Charles Samra be and hereby is retained by this court, with a right in the plaintiff to again seek relief in the event of evidence of a future violation.

The plaintiff's prayer is granted in part and an injunction in conformity with these findings will forthwith issue.

---

2. Loss rightly concludes that the exemption is not destroyed if securities are issued not by sale but as a gift or loan.

Securities Regulations, page 375, footnote 247.