**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**STANWOOD OIL CORPORATION, n/k/a Penn Star Oil Corporation, Inc., John G. Starr, Defendants.**

**Civ. A. No. 80–206 Erie.**

United States District Court,
W. D. Pennsylvania.

June 22, 1981.

John L. Hunter and Steven B. Boehm, Securities and Exchange Commission, Arlington, Va., for plaintiff.

Anthony Chambers, Bradford, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

On December 8, 1980, the Securities and Exchange Commission filed a complaint for injunctive relief against defendants alleging violation of antifraud and registration provisions of the federal securities laws. On December 22, 1980, the court ordered preliminary injunctions following a hearing. Later, on February 20, 1981, the court entered final judgment as to counts 2 and 3 of the complaint, permanently enjoining defendants from further violations of the antifraud provisions, § 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-106–5.

The remaining count alleged violations of the securities registration provisions, in particular, Sections 5(a) and 5(c) of the Securities Act of 1933 (Securities Act), 15 U.S.C. §§ 77e(a) and 77e(c). The parties have stipulated to the facts and plaintiff, SEC, has moved for summary judgment on Count 1, requesting that the defendants be permanently enjoined from selling or otherwise disposing of certain common stock in Stanwood Oil Corporation in violation of the registration requirement of the Securities Act.

Defendant, Stanwood Oil, first incorporated in 1945, is a publicly owned Pennsylvania corporation which currently owns and operates a number of oil wells on leased property in Pennsylvania. Between 1948 and 1953, Stanwood offered and sold at least 56,000 shares of unregistered common stock in reliance upon the Regulation A exemption, 17 C.F.R. §§ 230.251–.264. On August 10, 1954 Stanwood was enjoined by the United States District Court for the Southern District of New York from further violation of the securities registration provisions in the sale of this stock. In 1955, Stanwood's Board of Directors authorized an increase in the number of shares from 75,000 to 6,000,000. The stock was never registered. At that time, Stanwood had approximately 4,000 public shareholders.

Thereafter, in 1970, Stanwood filed a voluntary petition under Chapter X of the Bankruptcy Act and in 1972, these proceedings were converted to ordinary bankruptcy proceedings under Chapter VII. Pursuant to these proceedings, Stanwood received an undetermined amount of the outstanding shares of stock when certain persons, making up the majority stockholders, including the company's former president, John Kaye,

his wife and son, and certain other persons affiliated with Kaye, (collectively known as the Kaye group) under the terms of compromise agreements reached with the bankruptcy Trustee, delivered their stock back to the company. These parties all received valuable consideration for these shares at their return. Stanwood was later discharged from bankruptcy in October 1974.

Defendant Starr has been the president, chief executive officer and the only full-time employee of Stanwood since the company was discharged from bankruptcy. Starr previously was vicepresident in 1968, and became president in 1969. Starr currently owns approximately 940,700 shares of Stanwood stock and is now a clear majority shareholder after Stanwood had a 1 for 6 reverse stock split. Starr exercises complete control over the operations of Stanwood.

Beginning in February of 1976, the defendants offered and sold shares of common stock to at least 20 public investors, raising for Stanwood at least $230,000 in cash. In addition, defendants have exchanged stock for oil and gas properties, drilling equipment and other assets. These shares have never been registered. On December 22, 1980, this court ordered a preliminary injunction against the sale of this unregistered stock and the SEC now requests this injunction be made permanent.

The issue currently before the court is whether these shares which were reacquired pursuant to the bankruptcy compromise agreement are required to be registered under § 5 of the Securities Act of 1933. The parties have agreed on a stipulated set of facts, and the court finding no genuine issue as to any material fact finds this matter to be appropriate for summary judgment.

The sale of this stock generally occurred in two ways. Some of the sales were to parties who currently owned oil and gas leases which Stanwood was interested in acquiring. These people were approached by Starr in a business context and some of those sold their properties in exchange for shares in Stanwood Oil.

Starr also offered and sold stock to members of the general investing public through registered broker-dealers. Starr submitted an application for resumption of bid and ask quotations in Stanwood common stock to the National Quotation Bureau, Inc., through a registered broker-dealer, Muller & Co. Thereafter, Muller and other broker-dealers have made markets in Stanwood common stock. Starr announced to shareholders that Stanwood stock had resumed trading in the over-the-counter market. At various times since 1976, Starr has caused misleading news releases and releases and other public statements to be made creating a market in the investing public for shares in Stanwood common stock. These activities ceased upon the signing of a consent order as to counts 2 and 3 of the complaint. Until that order, Starr had continually engaged in market making activities on behalf of Stanwood.

In any analysis of the federal securities laws, we must always keep in mind the purpose of the Act; to provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof. In the first instance, it is the responsibility of the issuer to provide this disclosure through the filing of a registration statement.

Section 5(a) of the Securities Act, 15 U.S.C. § 77e(a) makes it unlawful for any person, directly or indirectly, to sell securities through jurisdictional means, unless a registration statement is in effect. Section 5(c), 15 U.S.C. § 77e(c) makes offer to sell in the same manner, unlawful. Prima facie violations of these provisions have been shown. It is not in dispute that no registration statement has ever been filed or that defendants have employed the jurisdictional means in their efforts and sales by mailing to investors stock certificates and promissory notes.

Since prima facie violations have been shown, it becomes the burden of the defendants to show that they are exempted from the registration process. *Securities*

*and Exchange Commission v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S.Ct. 981, 985, 97 L.Ed. 1494 (1953). The available exemptions appear in Sections 3 and 4 of the Securities Act, 15 U.S.C. §§ 77c and 77d.

Defendants appear to rely on § 4(1) of the Act, 15 U.S.C. § 77d(1) which exempts transactions "by any person *other than an issuer*, underwriter or dealer", (emphasis added). An issuer is defined in § 2(4), 15 U.S.C. § 77b(4) as "every person who issues or proposes to issue any security ...". Although defendants are both the company and its president, they claim they cannot be considered an "issuer", since there is no "issuance" involved in this sale. This stock was originally issued in 1948. Defendants contend that the concept of issuance is restricted to the initial issue of new stock. They argue that since this stock was previously issued, it is not part of a new issue and so defendant sellers cannot be issuers. The company is now merely selling shares it repurchased for investment purposes and is not "issuing" this stock.

The facts of this case belie this argument, however. The offer and sale of this stock was completed in such a manner as to constitute a public offering or distribution. Some of the shares were offered and sold to persons in exchange for valuable business acquisitions, such as oil and gas properties and equipment. However, other purchasers were members of the public and current shareholders who were encouraged to purchase shares due to press releases put out by defendants and by market making efforts which described alleged recent acquisitions and other favorable business conditions. These reports were disseminated in such a manner that they would reach members of the general investing public, precisely the group the securities laws were intended to protect.

Furthermore, there is nothing in the federal securities laws which would exempt from the registration process the resale of shares which had been reacquired by the original issuer. Sales of stock need not deal only with issues of new stock to be considered a distribution or an offering which would invoke the registration requirements. Case law indicates that even where shares had been previously registered, sold to the public, and later reacquired by the issuer, they would still be subject to re-registration in the event of a subsequent re-distribution. *Securities and Exchange Commission v. Hillsborough Investment Corp.*, 173 F.Supp. 86, 89 (D.N.H.1958); *First Multifunds for Daily Income v. United States*, 602 F.2d 332 (Ct.Cl.1979). This has also been the position of the Commission and commentators. *In the Matter of Whitney & Company*, 41 SEC 699 (1943); Securities Act Release No. 5817 (March 15, 1972); Loss, Securities Regulation, Vol. I, p. 653 (2nd ed. 1961).

Here, we have a distribution of shares that had been out of the trading market for about twenty years and then were reacquired by the corporation pursuant to a bankruptcy settlement. The fact that they had been originally issued in 1948 does not exempt a later public offering of these shares. The members of the investing public are still entitled to the protection the registration requirement was intended to provide. This result is even more compelling in this case since this stock at original issue was never registered and was earlier subject to an injunction against sales due to lack of registration. This is not the case of a company, having reacquired its own previously registered shares to hold for investment purposes, selling those shares in a business setting to purchase corporate assets. This is the sale of unregistered stock by an issuer, to members of the investing public. This is precisely the situation the registration provisions are intended to cover.

Therefore, we find that the sale of this stock by the defendants is covered by §§ 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77c(a) and 77c(c) and the offer and sale of this stock without a registration statement in effect is in violation of these provisions. Because the defendants have stipulated that they will continue to trade in these shares without a registration statement unless enjoined by this court, the preliminary injunction ordered by this court on December 22, 1980 will be made permanent.