THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MAX SILVERMAN, Appellant.

458

Argued October 3, 1939; decided November 21, 1939.

*Sol A. Klein* and *M. E. Davidson* for appellant.

*John J. Bennett, Jr., Attorney-General* (*Hiram C. Todd* of counsel), for respondent.

FINCH, J. On the present trial of defendant for conspiracy to obstruct the administration of justice, he entered a plea of former conviction. The facts out of which this plea arises are as follows: On March 3, 1935, Samuel Drukman was found murdered in a garage in Brooklyn. Three persons were arrested on suspicion of murder, whereupon defendant, with many others, entered into and engaged in a conspiracy to prevent the authorities from prosecuting the Drukman murderers. For this latter crime defendant, together with other conspirators, was indicted on May 18, 1936. This is known as indictment No. 14.

The plan of the conspiracy was to conceal possible witnesses, both within and without the State. As part of defendant's participation in the conspiracy, he fled from New York in November, 1935, so as to prevent his being called as a witness in the prosecution of the Drukman murderers.

On February 20, 1936, the Druckman murderers were convicted. After May 18, 1936, defendant was charged a second time by indictment No. 20, for engaging in a new conspiracy. This second conspiracy was alleged to have for its object the prevention of the arrest of defendant for his participation in the first conspiracy.

In September, 1937, defendant was apprehended in California and brought back to New York, where he has since been tried and convicted under indictment No. 20 for his part in the second conspiracy.

The case at bar involves the trial of defendant under indictment No. 14, i. e., the primary conspiracy to prevent the prosecution of the Drukman murderers. The trial judge ruled as a matter of law that the prior conviction of defendant under indictment No. 20 would not subject defendant to double jeopardy in the case at bar, i. e., the trial of indictment No. 14.

When a defendant interposes a plea of a former conviction, the burden of proof rests upon him to show that the offense charged in the indictment is the same offense as that for which he was previously convicted. (Wharton on Criminal

Evidence [11th ed.], § 219, and cases cited; Underhill on Criminal Evidence [4th ed.], § 363, and cases cited.)

The gravamen of the crime of conspiracy is the corrupt agreement. (*People* v. *Flack*, 125 N. Y. 324; *People* v. *Tavormina*, 257 N. Y. 84.)

Did defendant engage in two separate conspiracies, one to save the Drukman murderers (indictment No. 14), and two, to save himself from prosecution as a defendant for attempting to save the Drukman murderers (indictment No. 20)? Or was there a blanket agreement that defendant would keep away from New York State until the prosecution of the Drukman murderers and until any unlawful acts committed in connection therewith had blown over or for defendant "to keep away from New York" and "come back as soon as Mr. Todd would get out of office?"

The absence of defendant from New York was a continuous absence. The proof concerning such absence was the same in the previous trial under indictment No. 20 as in the present trial under indictment No. 14. Such proof in brief is as follows: In November or December, 1935, defendant became a fugitive from justice and continued such fugitive until September, 1937, when he was apprehended by the police in California and brought back to New York. During the two years he was a fugitive, defendant went to various places in California and Nevada, using various false names and directing the chauffeurs employed by him to use false names. The automobile of defendant was registered in California under a false name, with the defendant obtaining a license to drive under a false name. The family of defendant in New York carried on correspondence with him under false names. Defendant frequently stated during the two years he was a fugitive that he used aliases, moved from one place to another and lived in apartments instead of hotels in order not to be detected. While away from New York, defendant was not employed but received $800 to $1,000 per month, which was forwarded by members of his family. These moneys were sent under false names. In May, 1936, defendant learned that he had been indicted in Brooklyn

in connection with the Drukman murder (indictment No. 14, under which defendant was tried in the case at bar).

The only witnesses called on behalf of defendant were the clerk of the court who testified concerning the court records bearing on the claim of defendant of former conviction, and Honorable Hiram C. Todd, Special Assistant Attorney-General, who was called to testify with respect to a report made by a psychiatrist concerning the mental capacity of a witness for the People, namely, Detective Corbett. Defendant did not take the stand, and no testimony by him was adduced contradicting that given by the witnesses for the People.

Upon the foregoing state of the record, could the trial court say as a matter of law that there was no evidence from which the jury could find that there was one blanket agreement to keep away from New York until Mr. Todd would get out of office? It is true that, comparing the two indictments, the allegations differ as to the dates of the commission of the crimes, the names of the conspirators, the object of the conspiracy and the purpose of the overt acts of defendant Max Silverman. Even with these differences it appears, as a part of the case for the People, that defendant repeatedly stated that it was necessary for him " to keep away from New York " and that he would " come back as soon as Mr. Todd would get out of office." This and other testimony shows that there arises at least a question of fact for the jury, whether there was one blanket agreement or two. It may well be that defendant has participated in two distinct conspiracies. But on this record that was for the jury to say, since a question of fact was presented. Authority is not lacking. In *Short* v. *United States* (91 Fed. Rep. [2d] 614) it was contended that because of differences in periods of time covered by the conspiracies as alleged, differences in the places charged as the place of conspiring, differences in the persons charged as conspirators, differences in the overt acts alleged to have been committed in furtherance of the conspiracies, and in the charge of the violation of an additional statute as being

within the object of the conspiracy, no question of double jeopardy arose. Nevertheless the court held that there was evidence from which the jury might have drawn the conclusion that the conspiracies were in fact the same. Therefore, the question should have been submitted to them for their determination.

In applying the constitutional safeguard against double jeopardy, this constitutional protection is not a mere matter of formal pleading, but the courts have consistently held that a single conspiracy may not be split up into different indictments. (*Matter of Snow*, 120 U. S. 274; *Short* v. *United States, supra; People* v. *Farson*, 244 N. Y. 413, 419.) A test is set up which considers evidence and not the theory of the pleader. (*Murphy* v. *United States*, 285 Fed. Rep. 801; certiorari denied, 261 U. S. 617.)

The judgments should be reversed and a new trial ordered.

CRANE, Ch. J., LEHMAN, LOUGHRAN and RIPPEY, JJ., concur; HUBBS, J., dissents; O'BRIEN, J., taking no part.

Judgments reversed, etc.