Solomon A. Klein, Asst. Dist. Atty., of Brooklyn, N. Y. (Hyman Barshay, of Brooklyn, N. Y. and Robert T. McCracken, of Philadelphia, Pa., on the brief), for appellant.

John J. Corcoran, Jr., Asst. U. S. Atty., of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

**UNITED STATES v. SEALFON.**

**No. 9154.**

Circuit Court of Appeals, Third Circuit.

Argued Oct. 24, 1946.

Decided May 8, 1947.

Before BIGGS, ALBERT LEE STEPHENS, and KALODNER, Circuit Judges.

STEPHENS, Circuit Judge.

Robert Sealfon was convicted in the United States District Court of New Jersey for the crime of uttering and causing to be uttered forged invoices for the pur-

pose of defrauding the government. He appeals from the judgment.

There were two indictments and two trials involving the appellant and arising out of the same transactions.

(1) An indictment was filed against the appellant, together with the Fresh Grown Preserve Corporation, Murray Greenberg, Leo Greenberg, the S. J. Baron Corporation and others, for *conspiracy* to defraud the United States (18 U.S.C.A. § 88) and to commit offenses against the United States (18 U.S.C.A. §§ 72 and 80). The Fresh Grown Preserve Corporation, Murray Greenberg, Leo Greenberg and S. J. Baron Corporation pleaded guilty. A jury found appellant *not guilty*. (Other defendants not mentioned here were acquitted by direction of the court.)

(2) An indictment was filed against the appellant, together with Fresh Grown Preserve Corporation, Murray Greenberg and Leo Greenberg, for uttering and causing to be uttered false and forged invoices for the purpose of defrauding the United States. The appellant was charged as a "principal", defined as one who *aids and abets* in the commission of a crime (18 U.S.C.A. § 550). All of the defendants, except Robert Sealfon, pleaded guilty. A jury found him *guilty*.

The appellant was tried on the indictments in the order we have them set forth. He raises the question whether the court in the second trial erred in rejecting his plea of res judicata, interposed on the basis of his former acquittal.

█ There is conclusive authority for the rule that where a conspiracy to commit a crime is charged as an offense, neither an acquittal nor a conviction of a *conspiracy* to commit the crime is per se a bar to a prosecution for the commission of the crime, or for *aiding and abetting* another to commit it. The two are distinct and separate crimes. Carter v. McClaughry, 1902, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; Louie v. United States, 9 Cir., 1914, 218 F. 36; Bens v. United States, 2 Cir., 1920, 266 F. 152; and Curtis v. United States, 10 Cir., 1933, 67 F.2d 943. On page 643 of the opinion in the very late case of Pinkerton v. United States, 1945, 328 U.S. 640, 66 S.Ct. 1180, at page 1182, appears the following: "Nor can we accept the proposition that the substantive offenses were merged in the conspiracy. There are, of course, instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. See United States v. Katz, 271 U.S. 354, 355, 356, 46 S.Ct. 513, 514, 70 L.Ed. 986; Gebardi v. United States, 287 U.S. 112, 121, 122, 53 S.Ct. 35, 37, 77 L.Ed. 206, 84 A.L.R. 370."

Wisely or not, the doctrine that the conspiracy fuses into and becomes one with the accomplished crime is not made the American rule. By operation of statute the "aider and abettor" of the commission of a crime is a principal in the crime, and is punishable as though he actually was the perpetrator of the crime. Title 18 U.S.C.A. § 550 provides that "whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

In Pinkerton v. United States, supra, the Supreme Court upheld the conviction of a man on a substantive crime upon evidence that he had conspired with the actual perpetrator, and no evidence had been given that he had withdrawn from the conspiracy before the crime was committed. The theory was that since the conspiracy continued through the actual commission of the crime, "The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle." 328 U.S. at page 647, 66 S.Ct. at page 1184.[1]

---

[1] On Page 646 of 328 U.S., page 1183 of 66 S.Ct. of the Pinkerton case, the court quoted from Hyde v. United States, 225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614. We repeat it here with a sentence of the court's which follows immediately. "As stated in that case, 'Having joined in an unlawful scheme, having constituted agents for its performance, scheme and

The difference in the two cases is that in our case the defendant was acquitted in the conspiracy charge, and convicted on the substantive charge, not as the perpetrator but as an aider and abettor. In the Pinkerton case the defendant was convicted on both charges; on the substantive, as in our case as an aider and abettor. But the difference does not affect the principles to be applied. The reason for sustaining both convictions in the Pinkerton case is that (borrowing an expression from the opinion) "The agreement to do an unlawful act is * * * distinct from the doing of the act." There the jury found every essential to a conspiracy present, as well as the fact that the overt act or acts in furtherance of the conspiracy aided the commission of the unlawful act. In our case the jury found something lacking in the evidence given in the attempt to convict the defendant of a conspiracy, but found the evidence given in the attempt to convict him of the substantive case sufficient to establish his aiding and abetting in its commission.

There is nothing significant in the fact that the evidence was substantially the same in the two trials of defendant. The very record of the first trial could have been introduced in the second trial under stipulation, and the case submitted upon it alone without violating the principle under discussion. Of course, this would not be true unless there were an ingredient of the one offense not found in the other, but in such a case there would be but one offense and the apparent difficulty fades out.

The principle applied in United States v. DeAngelo, 3 Cir., 1943, 138 F.2d 466, which the appellant cites, has no application here. In that case it was thought that the defendant would have had to be "present" to have been found guilty in the first trial, and that issue was resolved in the negative. The same requirement was in the second trial, and the issue was resolved in the affirmative. The court reversed the verdict and judgment of conviction in the second trial because of a rule of evidence that a fact having once been judicially determined between the same parties cannot again be litigated. United States v. Oppenheimer, 1916, 242 U.S. 85, 88, 37 S.Ct. 68, 61 L.Ed. 161, 3 L.R.A. 516. No such situation is present in our case. The two juries which tried appellant might have found every word of testimony given them to be true, and yet have determined, as was their right, Morris v. United States, 9 Cir., 1946, 156 F.2d 525, to find guilt or innocence in either without the slightest effect, one upon the other. Fall v. United States, 1931, 60 App.D.C. 124, 49 F.2d 506, writ of certiorari denied in 283 U.S. 867, 51 S.Ct. 657, 75 L.Ed. 1471; United States v. Carlisi, D.C.1940, 32 F.Supp. 479; and United States v. Halbrook, D.C.1941, 36 F. Supp. 345.

We briefly state the facts, which were substantially the same in both the Sealfon cases, in the margin.[2]

---

agency to be continuous until full fruition be secured, until he does some act to disavow or defeat the purpose he is in no situation to claim the delay of the law. As the offense has not been terminated or accomplished, he is still offending. And we think, consciously offending,—offending as certainly, as we have said, as at the first moment of his confederation, and consciously through every moment of its existence.' Id., 225 U.S. at page 369, 32 S.Ct. [793] at page 803 [56 L.Ed. 1114, Ann.Cas.1914A, 614]. And so long as the partnership in crime continues, the partners act for each other in carrying it forward."

[2] The appellant was engaged in selling syrup, and operated the Sero Syrup Company, a civilian business, within the Brooklyn Navy Yard. Murray and Leo Greenberg manufactured syrup, and were the president and vice-president, respectively, of the Fresh Grown Preserve Corporation. Under government regulations there were two ways to get sugar that would go into the syrup: (1) By obtaining a certain basic quota; and (2) by replenishment of the sugar obtained under the quota which had been used for a product delivered to "exempt agencies".

One Sanford J. Doctors, employed by Kraemer & Company (brokers), brought Murray Greenberg and Sealfon together. Some sales of syrup followed, and commissions therefor were paid to Kraemer & Company. Then, Doctors at the request of Murray Greenberg and because of the scarcity of sugar, approached Sealfon with the proposition that Sealfon should write a letter to Murray Greenberg to the effect that he sold syrups to exempt

■ We find no error in the trial court's ruling on the res judicata plea, unless, as contended by the appellant, the matter should have been presented to the jury as a question of fact.

In support of the contention, three cases are cited, Edwards v. United States, 312 U.S. 473, 482, 61 S.Ct. 669, 85 L.Ed. 957; Short v. United States, 4 Cir., 91 F.2d 614, 618, 619, 112 A.L.R. 969; and People v. Silverman, 281 N.Y. 457, 24 N.E.2d 124. None of these cases helps appellant.

The Edwards case is far afield. The other cited cases involve facts which give rise to the question whether two distinct conspiracies had been entered into by the respective defendants. They follow the rule set forth in 23 C.J.S., Criminal Law, § 1129, p. 623 (former jeopardy), that "Where there is no dispute as to the facts, and the only question is whether accused has been in jeopardy, it is a question of law for the court. * * * Where, however, the plea is based on a matter of fact which is shown by evidence outside the record, the determination of the question of former jeopardy, or of the identity of the present offense with that charged on the

agencies in order that Greenberg could sell him more syrup.

Sealfon contacted Murray Greenberg regarding the matter, and Murray Greenberg testified that they prepared a draft of such a letter, inferring that Sealfon was selling to the Brooklyn Navy Yard. Murray Greenberg or his brother were to submit the necessary forms to the ration board, with invoices showing sales of syrup through the Sero Syrup Company for shipment to the Brooklyn Navy Yard, in order to secure replacements of sugar used for the amounts of syrup shown on the invoices. Sealfon was to have the syrup at a cheaper price in the form of a rebate of two cents a pound for sugar secured from the ration board.

The record discloses a contract between Sealfon and the Fresh Grown Preserve Corporation whereby the latter was to furnish Sealfon with imitation vanilla syrup, entered into at the office of Kraemer & Company and delivered to the Greenbergs along with the following letter, addressed to the Fresh Grown Preserve Corporation:

"Dear Sirs:

In regard to your request for information about our sales outlets we wish to advise you that at the present time some of our syrups are being sold at the Brooklyn Navy Yard, Republic Aircraft, General Aircraft, Sheepshead Bay Training Station, and various other defense plants throughout Long Island. The total amount used by these plants varies from approximately 1200 gallons to 2000 gallons per week.

Very truly yours,
Sero Syrup Company
by Robert Sealfon."

Testimony shows that syrups "sold at the Brooklyn Navy Yard" were in fact sold to a civilian agency located therein, and that the reference to "1200 gallons to 2000 gallons per week" was far in excess of Sealfon's basic quota for prior months.

The record shows other transactions by Sealfon wherein he attempted to secure replacements from the ration board.

Exhibits before the court include applications prepared for, and presented to, the ration board by Leo Greenberg, accompanied by invoices indicating deliveries to the "Brooklyn Navy Yard" by the Sero Syrup Company, the testimony showing, however, that such deliveries were made instead to a civilian concern, the National Biscuit Company.

Sealfon paid Doctors over $10,000 as commissions on the syrup sold by Greenbergs to Sealfon. Doctors testified that the Kraemer & Company was paid commissions on sales made of syrup that came out of the Greenbergs' regular quota. Murray Greenberg testified that he paid Sealfon rebates as per their understanding. Truckmen, who picked up the syrup at the Greenberg plant for Sealfon for delivery to the National Biscuit Company, testified as to the change in handling transactions from checks to cash. In fact checks were made out by Sealfon to the truckmen, who in turn cashed the same, taking out their own fee and paying the Greenbergs then in currency for the particular load as it was picked up. The customary invoices were not used as to these transactions.

Replenishment certificates were issued upon the above false invoices by the ration board, and the transactions between the Greenbergs and Sealfon were thus carried out and continued for over a year.

The indictment for conspiracy (18 U.S. C.A. §§ 72 and 80) charged overt acts: that Robert Sealfon made a fraudulent application for the replacement of sugar, and delivered to the Fresh Grown Preserve Corporation the above-quoted letter. In the instant case the identical invoices, the letter, the same testimony and exhibits were admitted into the evidence.

former trial, is generally for the jury, and the court cannot overrule the plea because of facts within its own knowledge."

In our case the record of the former trial was before the court, showing the facts on its face, and the problem posed by appellant's plea of res judicata admitted of but one conclusion, as has been seen. It was, then, a question of law, and it follows that there was no error in the trial court's treatment of it as such.

■ Our attention is directed to certain instances with relation to the interrogation of Murray Greenberg, wherein the trial court excluded evidence over appellant's objections. The questions went to the credibility of Murray Greenberg as a witness. The appellant was claiming the answers to his interrogatory would support his claim that the witness testified falsely for the government with the hope of reward in a lighter sentence than he would otherwise get. The jury was fully instructed as to Greenberg's admission on the stand of his having pleaded guilty to two charges against him and of the fact of his being an accomplice. The jury was also instructed to consider Murray Greenberg's testimony in the light of his probable hope that the court would mete out a lighter sentence by reason of his testimony. The matter elicited was cumulative upon a subject not related to the details of the crime of which appellant was being tried and was within the discretion of the court.

The judgment will be affirmed.