J. Irwin Shapiro, J.
Defendant Sigismondi has applied for an order granting him ‘ ‘ permission to inspect the minutes of the G-rand Jury, or, in the alternative * * * dismissing ” a three-count indictment accusing him, and a codefendant, of (1) assault second degree, committed July 17, 1965, “by wilfully and wrongfully using a knife against ” the throat of a named female, ‘ ‘ that being an instrument or thing likely to produce grievous bodily harm”[1]; (2) assault second degree, committed July 17, 1965 “ by use of their clenched fists ” upon said female ‘ ‘ thereby wilfully and wrongfully wounding and inflicting upon her grievous bodily harm, to wit: Multiple bruises of the face and body ”[2]; and (3) felonious possession of a dangerous weapon, i.e., a dangerous knife, on July 17, 1965, with intent to use it unlawfully against another.[3]
The basis of the motion is that ‘[1] there was no testimony before the grand jury, or evidence, .sufficient as a matter of law, to warrant a finding of the indictment”. The predicate for this conclusion is that since the criminal acts here charged were committed prior, but as direct steps leading, to the rape testified to by the prosecutrix the indictment lacks a sufficient evidentiary foundation in view of the fact that no corroboratory proof of the rape was submitted to the G-rand Jury.
The facts disclosed by the Grand Jury minutes are that the victim of the assaults was forcibly abducted in an automobile by two male persons — later identified by her as these defendants— and, while being carried away in the car, was given a choice of either participating in sodomy or submitting to rape, but refused either alternative. After having been ‘‘ slapped around ” and frustrated in an attempt to escape, she was raped by each defendant, in turn, while the other held a knife-point to her throat and threatened to cut her if she did not stop screaming. Nevertheless, she resisted, but in vain. She was not examined by a doctor until August 10, 1965, and the police were not notified until August 12, 1965. She made no immediate disclosure to her parents although, within a day or two after the event, she told a neighbor about it. Other than her own testimony there is no evidence that she was abducted by anyone, or that she was in the company of these defendants on the occasion *3 in question or that at or about the time of the occurrences narrated by her, she bore visible marks of recent physical violence or ravishment. When apprehended and questioned, the defendants denied having been in the girl’s company on the evening in question and specifically denied the charges made. There was no evidence that any knife was found or that either of the defendants had been known to possess one.
Clearly this evidence was insufficient to support an indictment charging rape because of the absence of the corroborative evidence required by section 2013 of the Penal Law, which provides that, “No conviction can be had for rape or defilement upon the testimony of the female defiled, unsupported by other evidence ” and which, as judicially construed, requires corroboration extending to “ every material fact essential to constitute the crime ” (People v. Page, 162 N. Y. 272, 274-275; People v. Croes, 285 N. Y. 279).
Prior to the determination in People v. English (16 N Y 2d 719, 720) which reversed convictions for and dismissed the counts of an indictment charging attempted rape and assault with intent to commit rape “ on the ground of a lack of the corroboration required by law for such convictions when testimony as to an actual rape has been received ”, the New York courts had tacitly or expressly followed the law as summarized in People v. Gibson (301 N. Y. 244, 245-246), in which Chief Judge Conway speaking for a unanimous court said: “ At common law, in the case of sexual offenses, it was not necessary that the testimony of the injured female be corroborated * * *.
The necessity of corroboration, if it exists at all, must thus be found in a specific statute ”. (Emphasis supplied.) The court then enumerated the existing statutes and concluded that in that case, one of incest, corroboration was not essential to a conviction because no applicable statute required it and that the conviction could be sustained even though “The evidence against defendant consisted solely of the testimony of the daughter ” (p. 245). Clearly the same result should follow on any sex charge where no corroboration of the complainant’s testimony is required by statute, and so it has been held (People v. Kirwan, 67 Hun 652, opinion in 22 N. Y. S. 160 [a case of assault with intent to rape]; People v. Phillips, 204 App. Div. 112, affd. 235 N. Y. 579 [a case of attempted rape]) although, upon the affirmance, the Court of Appeals commented that the question whether there could be a conviction of attempted rape on the unsupported testimony of the female “ is not presented by the record
*4 After apparently reserving that question for future determination, the Court of Appeals thereafter rejected the contention that a defendant could not be convicted of assault with intent to commit rape upon the female’s unsupported testimony of a completed rape (People v. Chimino, 270 App. Div. 114, affd. 296 N. Y. 554). In that case the Appellate Division, whose decision was affirmed without opinion, said (p. 115):
“ At the conclusion of the court’s charge to the jury, defendant’s counsel requested the court to charge that ‘ if the jury finds that the act of rape was consummated they can’t convict of assault under that charge.’ The court declined and defendant’s counsel excepted. In our opinion the rulings were correct.
“ 1. The rule is well settled that section 2013 of the Penal Law does not apply to an assault with intent to commit rape. (People v. Kirwan, 67 Hun 652, see 22 N. Y. S. 160 for opinion; People v. Phillips, 204 App. Div. 112, affd. without opinion, 235 N. Y. 579.)
“ It is to be noted that at the 1945 session of the Legislature a bill was passed amending section 2013 of the Penal Law, by extending the provisions thereof to attempted rape but was vetoed by the Governor. (Assembly Int. No. 171, Pr. No. 916.) ” The court also pointed out that in 1886 the Legislature had repealed a statute which theretofore forbade conviction of “ an assault with intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended or the offense attempted was perpetrated by such person at the time of such assault, or in pursuance of such attempt ’ ’ and the court then said that “ Since the repeal of the statute above quoted, it would seem that the doctrine of merger as evidenced by that statute has not existed in this State ” (citing for its conclusion among other cases People v. Tavormina, 257 N. Y. 84; People v. Rytel, 284 N. Y. 242, 245 and People v. Goggin, 256 App. Div. 995, affd. 281 N. Y. 611).
The same issue was raised — and decided adversely to the defendant — In other similar cases (People v. Wasserbach, 271 App. Div. 756 [2d Dept., 1946] [where the indictment charged attempted rape and assault with intent to rape]; People v. De Groat, 5 A D 2d 1045 [3d Dept., April 28, 1958], affd. 5 N Y 2d 947 [Feb. 26, 1959], cert. den. 368 U. S. 863 [Oct. 9, 1961] [where the judgment of conviction was modified by reversing the conviction for rape and affirming the conviction for assault with intent to rape]; People v. McGhee, 19 A D 2d 845 [2d Dept., Oct. 28, 1963] [an indictment and conviction of attempted rape] [4]; People v. Keithline, 13 N Y 2d 759 [July 10, 1963] [a *5 case in which the defendant was acquitted on two counts charging rape and was convicted of two counts of assault with intent to rape]).
The sole authority cited by the Court of Appeals in its majority opinion in English is People v. Lo Verde (7 N Y 2d 114). In Lo Verde the first count of the indictment charged the defendant with the crime of endangering the morals of a minor ‘ ‘ in that said defendant did then and there perpetrate an act of sexual intercourse with said child”. The majority of the court held that where the impairing was by sexual intercourse with the minor and such intercourse was the only act charged in the indictment, the basic crime that the prosecutor would have to establish to convict would be the sexual intercourse and that the affirmance of a conviction for impairing, where no corroboration of the rape existed, was in fact permitting the prosecution to circumvent the statute requiring corroboration in rape cases.
By citing and relying upon Lo Verde for its decision, the court in English necessarily extended its ruling in Lo Verde to encompass a case where there was uncorroborated testimony of a completed act of sexual intercourse but in which the prosecution did not have to prove the completed sexual act to sustain its other criminal charges against the defendant. Until then, Lo Verde could have been interpreted as being confined to the facts of that particular ease[5], that is to say, where the completed act of sexual intercourse was the sole conduct constituting the gravamen of the charges of both rape and impairing; and after Lo Verde, but before English, a number of courts had interpreted Lo Verde as being restricted to the fact pattern there presented. Thus, in People v. Dixon (36 Misc 2d 1068) a charge of attempted rape was upheld, there being no charge of rape in the indictment, although the uncorroborated testimony of the female showed a completed rape. (See, also, People v. Servidio, 39 Misc 2d 477 and People v. Fagan, 163 Misc. 495.)
It is apparent that by its determinations in Lo Verde and English the court overturned a long-standing legislative policy theretofore uniformly recognized by the courts. The extension of the original reach of Lo Verde by English apparently bespeaks a determination of the Court of Appeals to enunciate a newly *6 adopted policy with respect to sex offenses but the scope of that policy cannot be determined from a reading of the English opinion nor can it be reliably estimated by an analysis of the English record on appeal.
The People’s evidence in English tended to show that the defendant, by threat, had first obliged the girl to accompany him to his room, where he robbed her at knife-point. He then made sexual advances, but was rebuffed. His activities were interrupted when an importunate building superintendent rapped on the door and renewed an earlier demand for overdue rent. From this and the other evidence, the jury could have concluded that, not wanting his amorous endeavors to be interrupted further, English then compelled the girl to go with him to another apartment building a few blocks away; that they took an elevator to the top floor and then ascended some steps leading to a doorway to the roof; that at that point English, with the knife in his hand, asked the girl if she had any more money and, when she answered in the negative, ordered her out onto the roof; that she obeyed because, as she put it “ I had to do what he said ”[6]; that there, he obliged her to lie down ; that he then committed two acts of sexual intercourse to which she submitted because she was “frightened * * *
really frightened”[7] and that he then left her telling her to stay on the roof until he got down or he would kill her[8]. From this evidence the jury could have found and, by reference to the instruction given them on the assault count[9] it is implicit in the guilty verdict that they did find, that the assault with intent to rape was committed antecedently, inside the door to the roof, by the defendant’s mute offer — through the display of the knife coupled with obviously present ability to exercise unlawful physical violence upon the person of his victim if she did not obey him (People v. Wood, 10 A D 2d 231, 234-237; see, also, Hays v. People, 1 Hill 351; Mulligan v. People, 5 Park. Crim. 105, 111-112; 6 C. J. S., Assault and Battery, § 57, p. 913) and that such assault was committed for the purpose of preventing her resistance and with the intent to rape her[10].
*7 An examination of the record on appeal in People v. Colon[11] (16 N Y 2d 988) discloses that it differs from English only in the fact that the assault was not aggravated by the use of a weapon.
In Colon (supra) the court concisely set forth the present state of the law when it said: ‘‘ The jury was instructed corroboration was not essential as to the attempt [to rape] and the assault [with intent to rape] ” but this instruction, it said, was reversible error for under such circumstances “ corroboration would have been required ” (p. 989).
Considered in the light of the respective records on appeal, the rationale to be drawn from the holdings in English and Colon would seem to be that if the only perceivable intent underlying the antecedent attempt to rape, or the antecedent assault with intent to rape, is to perpetrate the sexual act, then, regardless of the manner — or the grievous physical consequences — of its commission, there can be no prosecution for such act if uncorro *8 borated “testimony as to an actual rape has been received ” (People v. English, 16 N Y 2d 719, 720, supra).
It is true that in our case the indictment does not disclose the commission of a rape nor that the assaults were committed with such an intent in mind, but the “ rights of an accused may not be made to depend upon the happenstance of draftsmanship ” (People v. Mussenden, 308 N. Y. 558, 561), and as the court said in another connection, a defendant’s rights are to be determined by “ (a) test * * * which construes evidence and not the theory of the pleader ” (People v. Silverman, 281 N. Y. 457, 462). Hence the decisive factor in this case is not what the District Attorney or the Grand Jury has elected to set forth in the indictment, but the testimony in the record.
While most reluctant to so decide, I see no escape from a holding that Lo Verde, English and Colon have now established the law to be that tvhere a criminal assault is committed solely in furtherance of the ultimate goal of rape, and there is uncorroborated testimony in the record that the rape was consummated, there is no lawful basis for charging a defendant with the commission of the antecedent assault.[12]
Tested by that principle not only must the assault counts in the indictment before me be dismissed but a like result must ensue with reference to the third count of the indictment which accuses the defendants of criminal possession of the knife since possession of the knife is only a criminal act if possessed “ with intent to use the same unlawfully against another ” (Penal Law, § 1897, subd. 9), and the proof in that regard depends upon the uncorroborated testimony of the female complainant that the defendants placed it against her throat and thereby committed the assault alleged in the first count of the indictment. Accordingly, the proof required to establish the possession “with intent to use ” and the assault with a dangerous weapon is identical. To give full accord to Lo Verde, as amplified by English and Colon, it must be held as a matter of lato that the third count of the indictment charging the defendants with possession of a dangerous weapon which, under the proof in this case, was used solely to accomplish the commission of the uncorroborated rape, cannot withstand attack because it would *9 permit a conviction by circumvention of the rule requiring corroboration as that rule is enunciated in those cases. The entire indictment therefore must fall.
It is obvious that the holding here made, compelled, as I believe it to be, by Lo Verde, English and Colon makes it possible for a defendant unilaterally to thwart his prosecution (and justice) by the simple expedient of pressing the attempted rape or the assault with intent to commit rape to a successful conclusion. Thus, one who responds to the entreaties of the assaulted female, and foregoes his desire to rape her, may be convicted of attempted rape or of an assault with intent to commit the crime of rape, bnt one who is completely ruthless and proceeds ‘ ‘ to finish the job ’ ’ by actually raping his victim is immune from conviction.
Reluctant as I am to come to the conclusion here enunciated I am somewhat solaced by the fact that if I am in error I can be quickly corrected because the District Attorney has the right to appeal from the order to be entered on this decision (Code Crim. Pro., § 518, subd. 3). In my opinion it is both desirable and expedient that he do so forthwith.
Whatever the determination of the Appellate Division may be, the party agrieved may, by permission, take a further appeal to the Court of Appeals (Code Crim. Pro., § 519, subd. 3; § 520) and for the purpose of having the law definitively defined in this highly important area of human rights it would seem to be no less desirable that such an appeal be taken.
Whatever doubt there may be in this matter I am resolving against the People since, unlike the situation that existed in People v. Reed (276 N. Y. 5, 9, 14), they have here the right of appeal. To require a trial in this case which might turn out to be an exercise in futility would not, in my opinion, be in furtherance of justice.[13]
The motion to dismiss the indictment is therefore in all respects granted for the reasons above stated.

. Penal Law, § 242, subd. 4.

. Penal Law, § 242, subd. 3.

. Penal Law, § 1897, subd, 9,

. The judgment was reversed because of error committed in. exclusion of evidence.

. There are of course a great many ways in which one can he guilty of impairing the morals of a minor (such as People v. Myrenberg, 146 App. Div. 854, app. dsmd. 208 N. Y. 579 [inducing infant to steal]; Stenson v. Flick Constr. Co., 146 App. Div. 66, app. dsmd. 203 N. Y. 553 [dangerous occupation]; People v. Nahmias, 146 N. Y. S. 856 [introducing a minor to gambling]) and in other ways too numerous to mention.

. Stenographer’s Minutes, pp. 45-46.

. Id., 43-44, 46-47.

. Id., 48.

. Id., 247.

. As gleaned from the Trial Judge’s reading of the attempted-rape count to the jury during his instruction, the indictment charged the crime on the theory of “resistance * * * forcibly overcome” (Minutes, p. 243). The instruction blended the theory of “resistance * * * overcome by fear of great bodily injury”, etc. (id., 245-246).

. In Colon, the victim testified that shortly after midnight, as she was walking along the street, a boy ran up to her, pushed her against a fence, and was then joined by two others. Being surrounded by the three of them she shouted for her husband but Colon put his hand over her mouth. Although they spoke to her in Spanish, she understood that they wanted her to go to a nearby park but she refused and they then pulled her across the street, Belardo and Colon being pointed out in court as two of her assailants. At that point she became afraid to scream and did not resist. There Belardo pushed her against a car and, with Colon at her side (playing with his penis) Belardo pulled up her skirt, ripped her pants (produced in court) and consummated an act of sexual intercourse with her. During the course of this occurrence Colon again put his hand over her mouth when an automobile passed by. After Belardo had finished his performance Colon moved around in front of her but just then a patrol car pulled up and the defendants took flight. There was an immediate disclosure by the woman to the police officer and then to her husband, and after the incident there were scratches about her nose and mouth. These were observed by the police officer, who also testified that her hair was disheveled and that she was crying.
Colon’s acts in stifling her first outcry, in preventing a repetition when the ear passed by and his physical assistance in pulling the woman from one side of the street to another, if committed with intent to rape her himself, or to help Belardo to do so, or both, were clearly assaults apart from the rape by Belardo and apart from any attempt by Colon himself, although lesser included-offenses and not “separate” in any such sense as would subject him to cumulative punishments (People v. Florio, 301 N. Y. 46, 54; People ex rel. Maurer v. Jackson, 2 N Y 2d 259, 268). But the memorandum in Colon indicates that if he assisted in Belardo’s consummated rape he could neither be convicted of an attempt nor an assault with intent to commit the rape, without the corroboration required by law. However, upon a new trial, he could be found guilty of separate acts of his own in the commission of an attempt to rape (apart from Belardo’s acts) and assault with intent to rape, without corroboration provided that a jury found that the attempt was not consummated.

. The statement of the court in People v. Pender (24 A D 2d 939 [1st Dept.]) is that “ The assault count fails because the element of the completed rape is unsupported by corroboration ” citing People v. English and People v. Lo Verde. Seemingly that statement supports my conclusion. It should be noted, however, that a reading of the record on appeal in that case shows that the only assault charge submitted to the jury was one of assault with intent to commit rape and sodomy. The ease, therefore, is not in point.

. The revised Penal Law, due to become effective September 1, 1967, will not make the question of law here raised academic for though, with one exception, it requires corroboration not only of the sex offenses defined in new article 130 but also “of an attempt to commit the same” (§ 130.15), the question is still left open whether under subdivision 4 of section 120.10 which provides that “a person is guilty of assault in the first degree when: 4. In the course of and in furtherance of the commission or attempted commission of a felony * * * he intentionally * * * causes serious physical injury to another person ”, the prosecution would become abortive if the defendant were charged with assault under that section and it appeared that the assault was committed “in furtherance of the commission * * * of a felony ”, to wit, the crime of rape which had in fact been consummated but the consummation of which stood uncorroborated.