J. Irwin Shapiro, J.
The two-count indictment against this defendant charges him with assault in the first degree and with the possession of a dangerous weapon, a knife, as a felony. The person allegedly assaulted by the defendant was a female living under the same roof with him in • a meretricious relationship, or what the complainant designated as living ‘ ‘ common law. ’ ’
The question presented by this motion of the defendant to dismiss the indictment and to transfer the controversy to the Family Court is whether that court has exclusive original jurisdiction under the Family Court Act of a charge of assault between an unmarried couple living as man and wife in the same household. (See, e.g., People v. Johnson, 20 N Y 2d 220; People v. Boyce, 55 Misc 2d 53).
Section 813 of the Family Court Act, as amended by chapter 156 of the Laws of 1964, so far as here pertinent, provides:
“ Any criminal complaint charging disorderly conduct or assault between spouses or between parent and child or between members of the same family or household shall be transferred by the criminal court not more than three days from the time the complaint is made, to the family court in the county in which the criminal court is located, unless
“ (i) the complainant withdraws the complaint not later than three days from the time it was made (Emphasis supplied.) Defendant urges that the charge of assault made by complainant comes within the purview of the foregoing statute because she and he were “members of the same * * # household.”
The District Attorney contends that the Family Court Act “ did not contemplate giving the Family Court exclusive jurisdiction of assault eases arising between parties who were living together meretriciously ’
*955 A resolution of the problem presented requires an ascertainment -of the meaning intended by the use of the word ‘ ‘ household ” as it is contained in the New York State Constitution and the statutes implementary thereto.
In 1962, by amendment of the New York Constitution (art. VI, § 13), a general reorganization of courts was effected. In the process, a State-wide Family Court was created. Subdivision b of that constitutional provision recites that “ The family court shall have jurisdiction over the following classes of actions and proceedings which shall have originated in such family court * * * (7) as may be provided by law: * * * crimes and offenses by or against minors or between spouses or between parent and child or between members of the same family or household.” (Emphasis supplied.)
To implement this constitutional provision, the Legislature passed the Family Court Act (L. 1962, ch. 686). Section 115 of that Act grants “exclusive original jurisdiction” to the Family Court in particular situations and provides that the Family Court shall have such jurisdiction of ‘ family offenses proceedings, as set forth in article eight.” Section 812 of that Act (contained in art. 8) provides that “ The family court has exclusive original jurisdiction, subject to the provisions of section eight hundred thirteen, over any proceeding concerning acts which would constitute disorderly conduct or an assault between spouses or between parent and child or between members of the same family or household.” Section 813 provides that:
“ (a) Any criminal complaint charging disorderly conduct or an assault between spouses or between parent and child or between members of the same family or household shall be transferred by the criminal court, not more than three days from the time the complaint was made, to the family court in the county in which the criminal court is located, unless “ (i) the complainant withdraws the complaint not later than three days from the time it was made; or
“ (ii) the family court had transferred the proceeding to the criminal court; or
“ (iii) the complaint is dismissed for legal insufficiency.” (Emphasis supplied.)
It is now settled law that an information or indictment for assault which comes within the purview of the foregoing provisions of the Family Court Act must be dismissed and the matter referred to the Family Court for its consideration in the first instance. (People v. Johnson, 20 N Y 2d 220, supra; People v. Boyce, 55 Misc 2d 53, surpra.)
*956 Neither the Constitution nor the statute contains a definition of the term “household” and the “ Committee Comments” under section 812 of the Family Court Act in McKinney’s Judiciary Law (Pt. 1, Book 29A, p. 343) point up the legislative intention not to stratify the meaning of that term. It there said: ‘ ‘ This section which is designed to implement section 13 subd. b, clause 7 of the new Judiciary Article, [Const. Art. 6] relies on the common law method of case by case adjudication to define ‘ family ’, ‘ household ’, and ‘ disorderly conduct ’ for purposes of the civil proceeding provided in this article.”
Available constitutional and legislative history fails to shed any light on the reason or reasons for the inclusion of the term “ household ” in both the Constitution and the applicable statutes. Neither the report of the Joint Legislative Committee on Court Reorganization with reference to the Family Court Act (transmitted to the Legislature on January 30, 1962) nor the Report of the Joint Legislative Committee on Matrimonial and Family Laws (N. Y. Legis. Doc., 1962, No. 34) mentions this matter in any way. Recourse must, therefore, be had to available judicial precedents. Diligent research, however, has failed to disclose any ruling by an appellate court in this State construing the term ‘ ‘ household ” in a factual setting similar to that here presented. In two lower court cases (People v. Dugar, 37 Misc 2d 652, and Matter of Best v. Macklin, 46 Misc 2d 622) the courts reached opposite conclusions as to the meaning to be given to the term “ household ” as it is used in the Constitution and the Family Court Act. In Dugar, the complainant, the defendant and several children had been living together in the same household for a period of four years in what to all appearances was a normal family relationship although defendant and complainant were not married. The District Court of Nassau County there held that the Family Court had exclusive original jurisdiction of the charge of assault lodged by complainant against defendant. In Best, in a similar situation, the criminal charge had been transferred by the City Court to the Family Court of Dutchess County for its prior consideration. The latter court determined that the Family Court had no jurisdiction over the parties even though they were living under one roof because there was no existing marital relationship.
These diverse holdings were based on two different rationales. In Dugar, the court observed (p. 654) that the relationship between a man and woman and children “ is such as to constitute them a ‘ household ’ as that term is generally used ”, and that “To hold otherwise from the mere fact that the man and woman are not legally married, would be to regard as meaning- *957 loss surplusage the words ‘or household. ’ ’ ’ Quite possibly sensing an automatic moral reaction to its conclusion thus expressed the court explained its holding by saying (pp. 653-654):
“At first blush it would seem strange that a court whose purpose, in large part, is restoration and preservation of marriages, should concern itself with crimes between persons who are living in a meretricious relationship. From a strictly moral or even legal point of view, it is difficult to see why such a matter should be considered fit for the conciliatory and rehabilitative procedures of .the Family Court.
“ Tet, if the jurisdiction were to be limited to legally constituted families, there was no need to add the word ‘ or household ’ to the statute. The Legislature must be presumed to have been aware of a fact that is common knowledge to every law-enforcement and social agency and to every court in this State, namely: there are countless households where man and woman reside with their offspring in a domestic relationship on a permanent basis without being legally married. Such households are responsible for many of the most difficult social problems concerning such agencies on a daily routine basis. They present behavior problems, support problems, mental and emotional problems. They concern the health, welfare and safety of children. They result in filiation proceedings, support proceedings and juvenile proceedings. In short, from a social point of view, this is a situation where the unique and flexible procedures and services available in the Family Court may possibly find a remedy. In some instances it may even be possible to arrange a legitimate marriage or at least furnish adequate counselling and protection.”
This pragmatic approach to the situation was unequivocally rejected in Best, although Dugar was not there cited, when the court said (46 Misc 2d 623):
‘ ‘ In this factual situation, admittedly, the parties are not married to one another. There are two children living in the same household who are not the issue of the respondent.
“ It is the public policy of this State not to place children in a situation which would impair their morals. Even if the parties held themselves out to be man and wife under an alleged common-law marriage, which is not the case here, this relationship would not change the moral atmosphere generated by these people living together under one roof.
“ Assuming this court accepted jurisdiction, the most that we could do in order to help would be to effect a marital reconciliation, which is impossible in this situation. Actually, it would *958 make the court a party, not only to an immoral relationship, but also, this court would be encouraging this relationship to continue.
“ The conciliation procedures cannot be utilized in this situation for there is no marriage to begin with.
“ The key is ¡section 812 in determining the legislative intent as to whether or not "article 8 of the Family Court Act should be employed between members of the same household. This court does not believe this to be the legislative intent, nor will this court countenance the children living in this unfavorable environment.
‘‘ After much deliberation and consideration, this court comes to the conclusion the rehabilitative processes of the Family Court do not enhance the declared public policy of the State of New York in this situation and, therefore, transfers this proceeding back to the Beacon City Court for appropriate criminal action pursuant to the Code of Criminal Procedure and the Penal Law of the State of New York.”
In Moore Shipbuilding Corp. v. Industrial Acc. Comm. (185 Cal. 200) the California Supreme Court was called upon to determine whether a child living in the same household with one Albert Bauer could be considered his dependent for the purpose of collecting compensation death benefits. The California statute (Workmen’s Compensation Act, § 14[c]) provided that: “no person shall be considered a dependent of [such] employee unless in good faith a member of the family or household of such employee ”.
The facts in that case were ‘ ‘ that for a year or more preceding his death decedent, Albert Bauer, was living in adulterous cohabitation with Lola Miller, the undivorced wife of one Samuel Miller ” and that “ Ida Miller, who at the time of Bauer’s death was three years of age is the daughter of Lola and Samuel Miller”. (185 Cal. 201.) In determining that Ida Miller, the child in question, was entitled to receive death benefits as a bona fide member of the decedent’s household the court said (pp. 206-207): “ The only question open to discussion is whether as a matter of law the relation shown by the undisputed evidence constitutes bona fide membership in a ‘ family or household ’ on the part of the claimant. There is little to be gained by reviewing the numerous definitions given by the courts and lexicographers of the words ‘family’ and ‘household.’ They mean different things under different circumstances. The family, for instance, may be an entire group of people of the same" ancestry, whether living together or widely separated; or it may be a particular group of people related by blood or marriage, or not related at *959 all, who are living together in the intimate and mutual interdependence of a single home or household. Again, the word ‘ household ’ is variously used to designate people, generally, who live together in the same house, including the family, servants, and boarders, or it may be used as including only members of the family relation. * * * There can be no doubt that Bauer, Mrs. Miller, and the little girl constituted a family or household. They were living together in all the interdependency and intimacy of man and wife and their legitimate offspring. ’ ’
Typifying the divergence between the views of the courts in Dugar and in Best, the dissenters in the Moore Shipbuilding Gorp. case said: “ To assume that the legislature, in the enactment of the Workmen’s Compensation Act, intended to reward parties to a relationship entered into in defiance of the penal laws of the state and against good morals is to violate the most fundamental canons of statutory construction ”. (185 Cal. 210.)
The dichotomous ratio decidendi given in the Best case was posited on two bases, the first of which is the same as that used by the dissenters in the Moore case in California. In both cases it was held that public policy is opposed to placing children in a situation in which their morals are likely to be impaired which, both courts reasoned, would be the case even if the parties held themselves out to be man and wife. The second reason advanced in Best alone was that if jurisdiction were accepted the most that the Family Court could do would be to attempt to effect a reconciliation of the parties and that this would necessarily place the court in a position of not only countenancing but aiding in the continuance of an immoral relationship.
Though it may not necessarily follow that in every case where an unmarried couple lives together under one roof the morals of the children living with them will be impaired, this case, as I see it, does not hinge on a determination of that question, for the statutory powers of the Family Court under the circumstances here posed are much broader in scope than mere “marital reconciliation”. Section 811 of the Family Court Act sets forth the rationale for the creation of the Family Court and its “ Finding and purpose ” in dealing with proceedings before it. It states:
“In the past, wives and other members of the family who suffered from disorderly conduct or assaults by other members of the family or household were compelled to bring a ‘ criminal charge ’ to invoke the jurisdiction of a court. Their purpose, with few exceptions, was not to secure a crimmal conviction and punishment, but practical help.
*960 “ The family court is better equipped to render such help, and the purpose of this article is to create a civil proceeding for dealing with such instances of disorderly conduct and assaults. It authorises the family court to enter orders of protection and support and contemplates conciliation procedures. If the family court concludes that these processes are inappropriate in a particular case, it is authorised to transfer the proceeding to an appropriate criminal court.” (Emphasis supplied.)
Carrying out that “ Finding and purpose,” section 815 provides that when a proceeding is transferred to the Family Court from a Criminal Court, the Family Court is authorized, among other things, “ (v) to issue a temporary order of protection, which may contain any of the provisions authorized on the making of an order of protection under section eight hundred forty-two.” The latter section provides that an order of protection ‘ may set forth reasonable conditions of behavior to be observed for a period not in excess of one year by the petitioner or respondent or both, or, if before the court, any other member of the family or household.” Thus the order of protection, as distinguished from a reconciliation, may require the respondent (defendant) to refrain from visiting the home or it may direct him to abstain from offensive conduct against any member of the household unit and may direct him to refrain from acts of commission or omission that may tend to make the home an improper place for a child. That such an order may be even more necessary against one who is not a spouse, or a member of the family, but merely a member of the ‘ ‘ household, ’ ’ is too self-evident to require elucidation.
I have, therefore, concluded that the charge of assault contained in the first count of the indictment must be transferred to the Family Court. The second count of the indictment which charges the possession of the knife as a felony becomes a crime only because it was possessed with the intention to commit the underlying assault (Penal Law, § 265.05, subd. 9), which crime, as I have pointed out, is within the exclusive original jurisdiction of the Family Court. Under such circumstances I am of the opinion that to carry out the purpose of the constitutional and statutory meaning of the word “ household ” that charge, too, must be transferred to the Family Court, since it is an integral part of the assault charge. (Cf. People v. Sigismondi, 49 Misc 2d 1, 8, affd. 27 A D 2d 937, affd. 21 N Y 2d 186.)
Accordingly, defendant’s motion to dismiss the indictment is granted and, as provided by section 813 of the Family Court Act, the charges therein contained are transferred to the Family Court in the County of Queens for its consideration.